UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

JAMES AMETEPE, on behalf of himself, individually, and on
behalf of all others similarly situated,

                                    Plaintiff,

                -against-

                                                              Docket No.:
                                                              18-cv-5384 (PAE)(SDA)

PEAK TIME PARKING, CORP., and FIH ENTERPRISE INC.,
And SAM DAR ENTERPRISES INC., and AD PARKING
INC. and ZAFAR MAJEED, individually, and FAYYAZ KHAN,
individually, and NAVEED ANJUM, individually, and MUSTAFA
ALI KHANDWALLA, individually,

                                    Defendants.

_____

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

BLAU LEONARD LAW GROUP, LLC
23 Green Street, Suite 105
Huntington, New York 11743
631-458-1010
sblau@blauleonardlaw.com
sleonard@blauleonardlaw.com
*Attorneys for Defendants*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................................................... iv

PRELIMINARY STATEMENT ................................................................................................... 1

NATURE OF THE CLAIMS AND DEFENSES ......................................................................... 1

STATEMENT OF FACTS ........................................................................................................... 2

   JAMES AMETEPE .................................................................................................................... 3

      1.   APPLICATION FOR EMPLOYMENT WITH SAM DAR (EXHIBIT "5") ................ 3

      2.   AMETEPE EVIDENTIARY ADMISSION AGAINST INTEREST (EXHIBIT "6") .. 3

      3.   AMETEPE VERIFIED RESPONSE TO COURT ORDER (EXHIBIT "7") ................ 3

      4.   AMETEPE DEPOSITION TESTIMONY (EXHIBIT "8") ......................................... 3

   PEDRO SABALA ...................................................................................................................... 6

      1.   SABALA JUDICIAL ADMISSION AGAINST INTEREST (Exhibit "9") ................. 6

      2.   APPLICATION FOR EMPLOYMENT WITH SAM DAR (EXHIBIT "10") ............. 6

      3.   SABALA VERIFIED RESPONSE TO COURT ORDER (EXHIBIT "11") ................. 6

      4.   SABALA DEPOSITION TESTIMONY (EXHIBIT "12") ........................................... 7

   EMMANUAL BOADI ................................................................................................................ 7

      1.   BOADI EVIDENTIARY ADMISSION AGAINST INTEREST (EXHIBIT "13") ...... 7

      2.   BOADI VERIFIED RESPONSE TO COURT ORDER (EXHIBIT "14") ................... 7

      3.   BOADI DEPOSITION TESTIMONY (EXHIBIT "15") .............................................. 7

   DEFENDANTS .......................................................................................................................... 9

      ZAFAR MAJEED - AD PARKING (EXHIBIT "20") ...................................................... 10

      FAYYAZ KHAN – FHI ENTERPRISE, INC. (EXHIBIT "22") .................................... 11

      NAVEED ANJUM – SAM DAR ENTERPRISES INC. (EXHIBIT "23") ..................... 12

      MUSTAFA ALI KHANDWALLA (EXHIBIT "24") ...................................................... 13

ARGUMENT .............................................................................................................................. 14

      I.     STANDARD ON SUMMARY JUDGMENT .................................................... 14

      II.    APPLICABLE LAW ............................................................................................ 15

      III.    SUMMARY JUDGMENT SHOULD BE GRANTED TO DEFENDANTS,
      WHO HAVE MET THEIR BURDEN OF DEMONSTRATING THAT
      THERE IS NO QUESTION OF MATERIAL FACT WITH REGARD TO

THE FLSA'S INAPPLICABILITY TO THIS ACTION. AND WHETHER THE
DEFENDANTS'ANNUAL INCOME WAS UNDER $500,000.................................. 17

IV.      PLAINTIFFS' STATE LABOR LAW CLAIMS SHOULD BE DISMISSED 21

V.      DEFENDANTS ARE NOT JOINT EMPLOYERS OF PLAINTIFFS............... 22

A.   Defendants KHAN and KHANDWALLA ............................................... 23

B.   Defendants ANJUM and MAJEED ........................................................ 24

C.   Corporate Defendants ............................................................................ 25

CONCLUSION................................................................................................................. 27

## TABLE OF AUTHORITIES

*Alvarez v. 40 Mulberry Rest., Inc*., 2012 WL 4639154, at *4 [SDNY 2012]...............................18

*Anderson v. Liberty Lobby, Inc*., 477 US 242, 249 [1986].................................................13

*Benitez v. F & V Car Wash, Inc*.,2012 WL 1414879, at *1 [EDNY 2012]...............................17

*Bonnette v. California Health & Welfare Agency*, 704 F 2d 1465, 1470 [9th Cir 1983]............22

*Bronzini v. Classic Sec., L.L.C.*, 558 F App'x 89, 89 [2d Cir 2014].......................................13

*Carter v. Dutchess Community College*, 735 F2d 8, 12 [2d Cir1984].....................................22

*Chambers v. T.R.M. Copy Ctrs.Corp*., 43 F3d 29, 37 [2d Cir 1994].....................................14

*Chen v. TYT E. Com.*, 2012 WL 5871617, at *3 [SDNY 2012]..............................................24

*Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ*., 444 F3d 158, 162 [2d Cir 2006]...............13

*Escobedo v. Metal Protective Coating Professionals, Inc*., 2013 WL 6504675, at *2 [SD Tex
    2013].................................................................................................................25

*Ethelberth v. Choice Sec. Co*., 91 FSupp 3d 339, 354 [EDNY 2015].....................................15

*Gamero v. Koodo Sushi Corp*., 272 F Supp 3d 481 [SDNY 2017].........................................14

*Goldberg v. Whitaker House Coop., Inc*., 366 US 28, 81 S Ct 933, 6 L Ed 2d 100 [1961]........21

*Grant v. All Star Baby Safety, Inc.*, 2016 WL 3746565 [EDNY 2016].....................................18

*Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 940 n.16 [SDNY 2013].......................24

*Herman v. Blockbuster Entm't Grp*., 18 F Supp 2d 304, 308 [SDNY1998], reconsideration
    denied in part, 2013 WL 1212790 [EDNY 2013]..........................................................24

*Herrera v. Genao*, 16 Civ. 4297 (ER) [SDNY Jul 5, 2018] ..................................................15

*Irizarry v. Catsimatidis*, 722 F 3d 99, 109 [2d Cir 2013]....................................................23

*Jacobs v. N.Y. Foundling Hosp*., 577 F3d 93, 96 [2d Cir 2009]...........................................15

*Jia Hu Qian v. Siew Foong Hui*, 2012 WL 1948820, at *2 [SDNY 2012] ...............................17

*Jones v. SCO Family of Servs*., 202 FSupp 3d 345, 351 [SDNY 2016]..................................15

*Koszkos v. Janton Industries, Inc*., 2016 WL 4444329, * 4 [EDNY 2016]...............................16

*Kuebel v. Black & Decker Inc*., 643 F3d 352, 359 [2d Cir 2011]..........................................13

*Kwan v. Andalex Grp. LLC*, 737 F3d 834, 843 [2d Cir. 2013]..............................................13

*Kwong v. Bloomberg*, 723 F3d 160, 164–65 [2d Cir 2013];.................................................13

*Li v. Cheng*, 2012 WL 1004852, at *5–6 [EDNY 2012] ......................................................18

*Li v. Zhao*, 35 F Supp 3d 300, 308 [EDNY 2014]..............................................................15

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 US 574, 587 [1986]..........................13

*Monterossa v. Martinez Rest. Corp*., 2012 WL 3890212, at *3 [SDNY 2012].........................17

*Morangelli v. Chemed Corp*., 922 F Supp 2d 278, 285 [EDNY 2013] ...................................24

*Morrison v. Int'l Programs Consortium, Inc*., 253 F 3d 5, 11 [DC Cir 2001]............................22

*N.Y. Mercantile Exch., Inc. v. Intercontinental Exch.,Inc*., 497 F3d 109, 119 [2d Cir 2007] ......20

*Owusu v. Corona Tire Shop, Inc*., 2010 WL 4791629, at *2 [EDNY  2010]..............................15

*Padilla v. Manlapaz*, 643 F Supp 2d 298, 301 [EDNY 2000]...............................................17

*Pinto v. Allstate Ins. Co*., 221 F3d 394, 398 [2d Cir 2000] .................................................14

*Quintero v. Anjudiromi Constr. Corp*., 2018 WL 1027716, at *2 [SDNY 2018] ........................15

*Redd v. N.Y. Div. of Parole*, 678 F3d 166, 174 [2d Cir 2012]..............................................13

*Rocha v. Bakhter Afghan Halal Kababs, Inc*., 44 F. Supp.3d 337, 346 [EDNY 2014]................16

*Romero v. Jocorena Bakery, Inc.*, 2010 WL 4781110, at *3 [EDNY 2010]..............................17

*Salinas v. Starjem Rest. Corp*., 123 F Supp 3d 442, 472 [SDNY 2015] .................................14

*Salomon v. Adderley Indus., Inc.*, 960 F. Supp. 2d 502, 2013 WL 4308569 [SDNY 2013] ........ 24

*Tapia v. Blch 3rd Ave. LLC*, 2016 WL 4581341, at *4 [SDNY 2016] ............................................... 14

*Tishman v. The Associated Press*, 2007 WL 4145556 at *9 [SDNY Nov 19, 2007] .................. 20

*Trinidad v. N.Y. City Dept. of Corr.*, 423 F Supp 2d 151, 169 [SDNY 2006] ............................. 21

*United States v. Diebold, Inc.*, 369 US 654 [1962] ...................................................................... 14

*Valdez v. H & S Rest. Operations, Inc.*, 2016 WL 3079028, at *2 [EDNY 2016] ...................... 16

*Valdez*, 2016 WL 3079028, at *2 ................................................................................................ 16

*Velez v. Vassallo*, 203 FSupp 2d 312, 332 [SDNY 2002] ........................................................... 17

*Xelo v. Mavros*, 2005 WL 2385724, at *3–4 [EDNY 2005] ......................................................... 18

*Yang Li v. Ya Yi Cheng*, 2012 WL 1004854, at *4 [EDNY 2012] ................................................ 18

*Zheng v. Liberty Apparel Co.*, 355 F 3d 61, 71 [2d Cir 2003] ..................................................... 21

## PRELIMINARY STATEMENT

Plaintiffs have failed to establish that Defendants are a business "enterprise" within the meaning of the Fair Labor Standards Act ("FLSA").  As such, none of the Defendants is an "employer" of any Plaintiff.  Accordingly, Defendants request a ruling dismissing the Second Amended Complaint against all individual and corporate Defendants, on the grounds there is no question of material fact, that Defendants do NOT meet the requirements to be deemed an enterprise in interstate commerce.

## NATURE OF THE CLAIMS AND DEFENSES

This is a Wage & Hour litigation involving alleged overtime violations of the FLSA and New York Labor Law ("NYLL").  It is alleged that the corporate Defendants operated multiple locations as a single integrated parking garage enterprise/operation and that Plaintiff and opt-ins were jointly employed by all seven [7] individual and corporate Defendants.

It is further alleged that Defendants, individually and corporately, as joint employers of Plaintiffs, were involved in and/or participated in the management or day-to-day operations including hiring, firing, methods and rates of compensation, hours worked, discipline, supervision or fixing of the terms and conditions of employment of all employees in the participating garages.  A copy of the Second Amended Complaint is annexed as **EXHIBIT "1."**

Defendants deny all material allegations and assert several defenses.  They allege that Plaintiffs were paid their proper wages.  A copy of Defendants' Answer to the Amended Complaint is annexed as **EXHIBIT "2."**

Defendants further contend that as a matter of law, they (and in particular FAYYAZ KHAN and ALI KHANDWALLA do not qualify as joint "employers" of Plaintiffs under the definitions set forth in both the FLSA and NYLL.  Defendants' alleged status as joint

1

"employer" fails to meet the "economic realities test" when considering the "totality of the circumstances."

Finally, Defendants allege that no FLSA enterprise coverage has been demonstrated. There is no evidence before this Court that would allow a jury to conclude that Corporate Defendants, individually or collectively, had gross annual revenue of at least $500,000 during the alleged Class period and were therefor subject to the FLSA's overtime requirements during that time.  Accordingly, claims made against all Corporate Defendants should be dismissed, as a matter of law.

## STATEMENT OF FACTS

Each of the Plaintiffs were non-managerial parking attendants, who allege that "they were employed by an enterprise consisting of at least four separate New York corporations PEAK TIME PARKING, CORP., FIH ENTERPRISE INC., SAM DAR ENTERPRISES INC., and AD PARKING INC.  ("PEAK", "FIH", "SAM DAR", and "AD") that operate as a single business enterprise engaged in the activity of operating parking garages, with centralized control of the business and labor operations located at 470 West 165th Street, New York, New York." [Exhibit 1, ¶2].

The Amended Complaint alleges that "Garage employs common management to set employees' hours and pay, and there is common ownership and financial control with respect to business revenue and employee wages, as well as the operation of the parking garages located at 1872 E. Tremont Street, Bronx, New York 1475 Macombs Road, Bronx, New York, and 133 E. 132nd Street, Bronx, New York." [Exhibit 1, ¶ 9].

Plaintiffs' JAMES AMETEPE ("AMETEPE") and PEDRO SABALA ("SABALA") worked Monday through Friday, eight [8] hours per day.  On Saturday, AMETEPE typically worked four [4] hours and SABALA worked nine [9] hours. They each received a regular hourly

2

wage of $9.75 and overtime compensation of $15.00 for each hour in excess of 40.  SAM DAR

paid cash wages on a weekly basis. Every pay period, AMETEPE and SABALA each received

an itemized payroll record setting forth days and hours worked, as well as wages and overtime

paid. They signed and initialed each statement to acknowledge receipt thereof.  AMETEPE's

time and payroll records are annexed as **EXHIBIT "3"** and SABALA's payroll records are

annexed as **EXHIBIT "4."**

## JAMES AMETEPE

**1.     APPLICATION FOR EMPLOYMENT WITH SAM DAR (EXHIBIT "5")**

Dated and signed 07.26.14.  Plaintiff checked off that he had never filed a prior work application

with SAM DAR; had never been previously employed by SAM DAR; does not know anyone in

the company.

**2.     AMETEPE EVIDENTIARY ADMISSION AGAINST INTEREST (EXHIBIT "6")**

Dated 11.04.16.  Plaintiff acknowledged that his Employer is SAM DAR, located at 1872 East

Tremont Avenue, Bronx, NY; his last day of work was 11.04.16 and he certifies that SAM DAR

does not owe him any money.

**3.     AMETEPE VERIFIED RESPONSE TO COURT ORDER (EXHIBIT "7")**

Court Order dated June 25,2019, required a verified response to the following:

> Q:      In your own words, who do you believe your employers to be and the periods of
> time that you were employed by such employers, relevant to this case.
> **RESPONSE:**
> No specific employer is identified.  Plaintiff specifies only 2 work addresses;1872 E.
> Tremont Street and 1475 Macombs Road, both in Bronx, New York, with claimed dates
> of employment May 2011 to November 2016.

**4.     AMETEPE DEPOSITION TESTIMONY (EXHIBIT "8")**

> Q. What was the name of the company in May of 2011 that you were working at?
> A. For the same people, the same, Mr. Anjum and Fayyaz.  They change the names.  It is
> the same people.  The company is a large company.  They constantly change the names.
> You can't keep the name.

3

Q. So you don't know the name of the company?

A. No.

**[Page 24]**

Q. Between 2012 and 2016, did you work for Zafar Majeed?

MR. MAGUIRE:  Objection.

Q. You can answer.

MR. MAGUIRE:  You may answer.

A. Yes.

Q. You didn't mention him.  You said that you worked for Mustafa, Anjum and Khan.

A. They employ me.  I don't know.  All I know is Mr. Fayyaz and Anjum, those are the only I know.  The other name you mention I don't know.  I know them by faces, but I don't know them by their names.

Q. So you didn't know Zafar Majeed; right?

A. Maybe I may know him.  Unless I see him.

Q. So my question is, for the record, you never worked for Zafar Majeed; correct?

A. I don't know Zafar.

**[Pages 27 -28]**

Q. Now in this case are you claiming that you worked for Peak Time Parking?

A. Yes, please, other companies.

Q. You are claiming that you worked for FIH Enterprises?

A. Yes, please.

Q. You are claiming that you worked for AD Parking?

A. Yes, please.

Q. You are claiming that you worked for Sam Dar Enterprises; correct?

A. Yes, please. Q

**[Pages 33-34]**

Q. When did you work for Peak Time Parking, give me the dates?

A. I am saying they were the first people that I work with at East Tremont Road, which turn now to Auto Zone, which I forgot the address.  I started with them in 2011.

Q. You started with who in 2011?

A. The companies here.

Q. No, no.  I am asking you specifically what dates did you work for Peak Time Parking?

A. This is what I am saying, they keep changing the names of the company, so I don't know which ones is now Peak.  I saw Peak somewhere in the Fordham area.  I don't know where that Peak is from.

Q. Have you ever received any document from Peak Parking –

A. No.

Q. -- relating to your work?

A. No.

Q. When did you work for FIH Enterprises?

MR. MAGUIRE:  Objection.

A. I can't remember the date.  I said they keep changing the names, but I think FIH was 1872 East Tremont Avenue, that was changed to Sam Dar.

Q. So you are saying that FIH became Sam Dar?

A. Yes, please.

Q. Did you ever receive any documents from FIH Enterprises relating to your employment?
A. No, please.
Q. When did you work for AD Parking?
A. I can't tell you.
Q. Have you ever received any documents from AD Parking related to your employment?
A. No, please.
Q. When did you work for Sam Dar Enterprises?
A. That is from 2014 to '16, between.
Q. Did you ever receive any documents from Sam Dar?
A. No, please.
**[Pages 34-35]**

Q. Let me make it easier for you.  From 2011 until 2017, what addresses do you remember working at?
A. I remember Macombs.
MR. MAGUIRE:  The addresses.
Q. What is the address of Macombs?
A. I can't tell.
Q. Do you remember any other addresses that you worked at a parking garage?
A. The last place which I work, that is 1872 East Tremont Avenue, that was the last place that I work.
Q. So other than those two locations, do you recall ever working at any other garage location from 2011 until 2017?
A. I know the places, but I can't tell you the address.  I can't remember the address.  I know the locations.
Q. You know the locations, but you can't tell me where they are?
A. I don't know the addresses.
**[Page 36]**

Q. How many days a week did you work at each garage?
A. Seven days in a week.
Q. So during the period of 2011 until 2016, is it your testimony that every week you worked seven days?
A. Yes, please.
Q. You never took a vacation?
A. No, please.
Q. You never were sick?
A. No.
**[Page 39]**

**PEDRO SABALA**

**1.      SABALA JUDICIAL ADMISSION AGAINST INTEREST (Exhibit "9")**

In *Sabala v. Reyer Parking*, 1:17-CV-00435-PGG [S.D.N.Y.] Sabala alleged in the

Complaint that he was employed by Reyer Parking Corp. from "approximately March 2013

through November 2016 at 1872 East Tremont Avenue garage and worked "twelve hours per

day, seven days per week."

The claim SABALA makes in the instant litigation, is that he worked 12 hours a day,

seven days a week (84 hours) in his employment with Defendants, during the identical period of

time, as alleged in *Reyer*.

There has been a judicial admission that SABALA was an employee of SAM DAR

commencing approximately July 26, 2014 and terminating November 4, 2016. Defendants deny

that they jointly or severally engaged in any unlawful conduct which would give rise to any

claim or otherwise entitle Plaintiff to any relief whatsoever, and further deny that Plaintiff is

entitled to any of the remedies that he seeks in this action.

**2.      APPLICATION FOR EMPLOYMENT WITH SAM DAR (EXHIBIT "10")**

Dated and signed 11.18.15.  Plaintiff checked off that he had filed a prior work

application with SAM DAR; had never been previously employed by SAM DAR; does not know

anyone in the company.

**3.      SABALA VERIFIED RESPONSE TO COURT ORDER (EXHIBIT "11")**

Court Order dated June 25,2019, required a verified response to the following:

Q:      In your own words, who do you believe your employers to be and the periods of
time that you were employed by such employers, relevant to this case.
**RESPONSE:**
No specific employer or work address is identified. He was not familiar with the name
Zafar Majeed.  His alleged dates of employment were March 2013 through December
2016.

4.      **SABALA DEPOSITION TESTIMONY (EXHIBIT "12")**

He worked at 1872 Tremont Ave, Bronx, NY from 3/13/13 – 11/17/16 and then got laid

off.  **(Pages 12-14)**. His claim in this lawsuit is for the time period of 3/3/13 – 11/17/16. He does

not know the company name, but he states there are 3 employers.  (**Pages20- 23)**.  Mr. Sabala

does not know the name of any co-employees that he worked with at 1872 Tremont from 3/2013

– 11/2016, other than James Ametepe.  **(Pages 24-25)**.  He does not know Peak Time Parking or

FIH Enterprise Inc. He does not know what those two names are. He does not know what Sam

Dar Enterprise Inc is or if he was ever employed by Sam Dar Enterprise Inc.  He states he was

never employed by AD Parking, Inc. **(Pages 35-37)**.

**EMMANUAL BOADI**

1.      **BOADI EVIDENTIARY ADMISSION AGAINST INTEREST (EXHIBIT "13")**

Dated 02.03.17.  Parking attendant since 01.01.17. Last day at work 01.27.17

Failed to provide work authorization and driver's license. AD PARKING does not owe him any

money.

2.      **BOADI VERIFIED RESPONSE TO COURT ORDER (EXHIBIT "14")**

Court Order dated June 25,2019, required a verified response to the following:

> Q:      In your own words, who do you believe your employers to be and the periods of
> time that you were employed by such employers, relevant to this case.
> **RESPONSE**:
> No specific employer or work address is identified. His alleged dates of employment
> were August 2013 to July 2014, and July 2016 to April 2017.

3.      **BOADI DEPOSITION TESTIMONY (EXHIBIT "15")**

> Q. After you came to the U.S. in 2010, when did you secure your first full-time
>  employment?
> A. 2013.
> Q. What did you do at that time?
> A. I worked as a parking lot attendant.
> Q. Where?

7

A. AD Parking.

Q. What was the address or place of business?

A. 331 East 132nd Street.

Q. How long did you work for AD Parking as a parking lot attendant?

A. Close to a year.

Q. So what month of 2013, do you remember?

A. August.

Q. You worked until when?

A. I left in July.

Q. July of?

A. 2014.

**(Pages 19-20**)

Q. When for the next time did you start working as a parking attendant?

A. I came back to work for the same company in 2016.

Q. When, when in 2016?

A. July of 2016, around July of 2016.

Q. How long did you work during that?

A. I left there around March, April.  Yes, April I am sure.

Q. March or April of 2017?

A. Yes, sir.

Q. Do you know who owned AD Parking?

A. From what I was told, Fayyaz Khan was the overall boss.  I can't tell you if he was the owner.  He was the overall boss.  He was in charge of the parking lots.

Q. Did you ever meet Mr. Fayyaz Khan?

A. Yes, I met him maybe two or three times.

**(Page 27)**

Q. From July of 2016 until April of 2017, did you only work at 331 East 132nd Street?

A. Yes, sir.

**(Page 31)**

Q. Now in this case there is a claim that you worked for Peak Time Parking and that is not true, is it?

A. No.

Q. You never worked for FIH Enterprises, did you?

A. No.

Q. Did you ever work for Sam Dar Enterprises?

A. No.

Q. So the only one you ever worked for was AD Parking; correct?

A. Yes, AD Parking, that is where I was posted.

**DEFENDANTS**

1.    The sole shareholder and officer of SAM DAR is NAVEED ANJUM.

    **(EXHIBIT "16")**.

2.    The sole shareholder and officer of PEAK PARKING is ZAFAR MAJEED.

    **(EXHIBIT "17")**.

3.    The sole shareholder and officer of FIH ENTERPRISES is FAYYAZ KHAN.

    **(EXHIBIT "18")**.

4.    The sole shareholder and officer of AD PARKING is ZAFAR MAJEED.

    **(EXHIBIT "19")**.

5.    Each corporate Defendant has a separate address. The corporate Defendants do not maintain a common central office at a single location.

    a.    AD PARKING, 331 East 132nd Street, Bronx, New York 10454.

    b.    PEAK TIME PARKING CORP., Lessee of 1872 East Tremont Avenue, Bronx, New York. PEAK PARKING did not operate a parking facility during the times in controversy.

    c.    FHI ENTERPRISE, INC., 1475 Macomb Road, Bronx, New York.

    d.    SAM DAR ENTERPRISES, INC. sub-lessee of 1872 East Tremont Avenue, Bronx, New York.

6.    Each corporate Defendant has its own bank accounts, with the sole signatory thereof being its sole shareholder. There is no commingling of corporate revenues or expenses.

7.    Defendants are not legally associated and do not act in the interest of each other with respect to any business purpose, including employees, payment of employees and/or share control over the employees.

8.    Each individual Defendant operates his respective Corporation for his own benefit and maintains control over such corporation as a closed Corporation.

**ZAFAR MAJEED - AD PARKING (EXHIBIT "20")**

1.      In January 2017, and prior thereto MAJEED was the Chief Executive Officer of AD

PARKING, which operated a licensed parking garage located at 331 East 132nd Street, Bronx,

New York 10454. AD PARKING is now a defunct company no longer in the business of

operating any parking garages or facilities.

2.      Plaintiffs AMETEPE and SABALA never worked for AD PARKING.

3.      Plaintiffs AMETEPE and SABALA have never worked for MAJEED.

4.      Opt-In Plaintiff BOADI was employed by AD PARKING for less than one [1] month

from January 1-27, 2017.  BOADI could not produce a work authorization and valid driver's

license so AD PARKING terminated his employment.  BOADI has correctly acknowledged, in

writing, that AD PARKING did not owe him any money.

5.      Because BOADI was a probationary employee, he would not have worked on a full-time

basis, until he produced proper work authorization documentation. BOADI never worked in

excess of 40 hours in any given work week and never became entitled to overtime compensation.

PEAK PARKING.

6.      MAJEED is the President and Chief Executive Officer of PEAK TIME PARKING

CORP., which is the tenant of a parking garage located at 1872 East Tremont Avenue, Bronx,

New York. On July 24, 2014 PEAK subleased the subject premises to SAM DAR

ENTERPRISES INC., which has operated a public parking garage at that location to the present

time.

7.      PEAK has never employed Plaintiff, JAMES AMETEPE, EMMANUEL BOADI

AND/OR PEDRO SABALA.

8.      MAJEED has never employed EMMANUEL BOADI.

9.      MAJEED has never been a shareholder, officer or employee of SAM DAR or FHI ENTERPRISE, INC.

10.      MAJEED has never had any involvement or participation in the management or day-to-day operations, hiring, firing, methods and rates of compensation, hours worked, discipline, supervision or fixing of the terms and conditions of employment of any employee of SAM DAR and/or FHI, including Plaintiff AMETEPE, BOADI AND/OR SABALA.

11.      MAJEED has never been a partner, co-shareholder, joint venturer or co-employee with Defendants FAYYAZ KHAN, NAVEED ANJUM or MUSTAFA ALI KHANDWALLA.

**(EXHIBIT "21")**

**FAYYAZ KHAN – FHI ENTERPRISE, INC. (EXHIBIT "22")**

1.      KHAN is the principal shareholder, President and CEO of FHI ENTERPRISE, INC.

2.      FHI is the licensed operator of a public parking garage located at 1475 Macombs Road, Bronx, New York.

3.      FHI has never employed Plaintiff, JAMES AMETEPE, EMMANUEL BOADI and/or PEDRO SABALA.

4.      KHAN has never employed Plaintiff, JAMES AMETEPE, EMMANUEL BOADI and/or PEDRO SABALA.

5.      KHAN has never been a shareholder, officer or employee of SAM DAR, PEAK or AD PARKING.

6.      KHAN has never had any involvement or participation in the management or day-to- day operations, hiring, firing, methods and rates of compensation, hours worked, discipline, supervision or fixing of the terms and conditions of employment of any employee of SAM DAR, PEAK and/or AD PARKING, including Plaintiffs AMETEPE, BOADI AND/OR SABALA.

7.     KHAN has never been a partner, co-shareholder, joint venturer or co-employee with Defendants ZAFAR MAJEED, NAVEED ANJUM or MUSTAFA ALI KHANDWALLA.

**NAVEED ANJUM – SAM DAR ENTERPRISES INC. (EXHIBIT "23")**

1.     ANJUM is the President and Chief Executive Officer of SAM DAR ENTERPRISES INC.

2.     Commencing July 24, 2014, SAM DAR became the sublessee of PEAK TIME PARKING CORP. ("PEAK") and the licensed operator of a parking garage located at 1872 East Tremont Avenue, Bronx, New York.

3.     SAM DAR employed Plaintiff, JAMES AMETEPE, as a parking attendant at 1872 East Tremont Avenue, Bronx, New York from approximately July 26, 2014 to November 4, 2016.

4.     ANJUM has never employed JAMES AMETEPE.

5.     SAM DAR employed PEDRO SABALA as a parking attendant at 1872 East Tremont Avenue, Bronx, New York from mid-November 2015 into January 2016 and then again, from April 2016 through November 2016.

6.     ANJUM has never employed PEDRO SABALA.

7.     At all times, SAM DAR was exclusively involved in the management or day-to- day operations, performed all of the hiring and paid all of the expenses, including the payroll of all of its employees, at the 1872 East Tremont Avenue parking facility.

8.     At all times, SAM DAR was exclusively involved in the hiring, firing, methods and rates of compensation, hours worked, discipline, supervision or fixing of the terms and conditions of employment of any employee of SAM DAR.

9.     ANJUM has never have been a shareholder, officer or employee of PEAK, FHI ENTERPRISE or AD PARKING.

10.     ANJUM has never been a partner, co-shareholder, joint venturer or co-employee with Defendants ZAFAR MAJEED, FAYYAZ KHAN or MUSTAFA ALI KHANDWALLA.

**MUSTAFA ALI KHANDWALLA (EXHIBIT "24")**

1.     KHANDWALLA has been employed as a Manager by FHI since 2012.

2.     FHI is the licensed operator of a public parking garage located at 1475 Macomb's Road, Bronx, New York.

3.     KHANDWALLA's job responsibilities at FHI include the hiring, firing, methods and rates of compensation, hours worked, discipline, supervision or fixing of the terms and conditions of employment of any employee of FHI, subject to the approval of his superiors.

4.     FHI has never employed JAMES AMETEPE, EMMANUEL BOADI and/or PEDRO SABALA.

5.     KHANDWALLA has never employed JAMES AMETEPE, EMMANUEL BOADI and/or PEDRO SABALA.

6.     KHANDWALLA has never been a shareholder, officer or employee of SAM DAR, PEAK or AD PARKING.

7.     KHANDWALLA has never been a principal, shareholder or officer of FHI.

8.     KHANDWALLA never had any involvement in the management or day-to- day operations or participation in the hiring, firing, methods and rates of compensation, hours worked, discipline, supervision or fixing of the terms and conditions of employment of any employee of SAM DAR, PEAK and/or AD PARKING, including Plaintiff AMETEPE, BOADI and/or SABALA.

9.     KHANDWALLA is not a partner, co-shareholder and/or joint venturer with Defendants FAYYAZ KHAN, ZAFAR MAJEED and/or NAVEED ANJUM.

13

10.     KHANDWALLA is not a co-employee with Defendants ZAFAR MAJEED and/or

NAVEED ANJUM.

**ARGUMENT**

**I.     STANDARD ON SUMMARY JUDGMENT**

Summary judgment is proper only when, construing the evidence in the light most

favorable to the non-movant, "there is no genuine dispute as to any material fact and the movant

is entitled to judgment as a matter of law."  (Fed. R. Civ. P. 56(a); see also *Bronzini v. Classic*

*Sec., L.L.C.*, 558 F App'x 89, 89 [2d Cir 2014]; *Kwan v. Andalex Grp. LLC*, 737 F3d 834, 843

[2d Cir. 2013]; *Kwong v. Bloomberg*, 723 F3d 160, 164–65 [2d Cir 2013]; *Redd v. N.Y. Div. of*

*Parole*, 678 F3d 166, 174 [2d Cir 2012]). The role of the court is not "to weigh the evidence and

determine the truth of the matter but to determine whether there is a genuine issue for trial."

(*Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ*., 444 F3d 158, 162 [2d Cir 2006] (quoting

*Anderson v. Liberty Lobby, Inc*., 477 US 242, 249 [1986])). A genuine issue of fact exists when

there is sufficient "evidence on which the jury could reasonably find for the plaintiff."

(*Anderson*, 477 US at 252).

In determining whether summary judgment is appropriate, a court must resolve all

ambiguities and draw all reasonable inferences against the moving party.  (See *Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp*., 475 US 574, 587 [1986] (citing *United States v. Diebold, Inc*.,

369 US 654 [1962]); see also *Gallo*, 22 F3d at 1223).  Summary judgment is inappropriate if

there is any evidence in the record from any source from which a reasonable inference could be

drawn in favor of the nonmoving party.  (See *Chambers v. T.R.M. Copy Ctrs.Corp*., 43 F3d 29,

37 [2d Cir 1994]).

The "mere existence of a scintilla of evidence" is not sufficient to defeat summary

judgment; "there must be evidence on which the jury could reasonably find for the plaintiff."

14

(Id.) The court's function is to decide "whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." (*Pinto v. Allstate Ins. Co.*, 221 F3d 394, 398 [2d Cir 2000]).

## II.    APPLICABLE LAW

Before addressing the merits of Plaintiffs' wage and hour claims, the Court must resolve several antecedent issues concerning the applicable law and the parties who are potentially liable under that law.  "The FLSA and the NYLL both "guarantee compensation for all work . . . engaged in by [covered] employees."  (*Salinas v. Starjem Rest. Corp.*, 123 F Supp 3d 442, 472 [SDNY 2015] (quoting *Kuebel v. Black & Decker Inc.*, 643 F3d 352, 359 [2d Cir 2011]).  "To establish liability on a claim for underpayment of wages, 'a plaintiff must prove that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work.'"  (Id.) (quoting *Kuebel*, 643 F3d at 361); see *Tapia v. Blch 3rd Ave. LLC*, 2016 WL 4581341, at *4 [SDNY 2016] (observing that under the FLSA and the NYLL, "[p]laintiffs bear the burden of proof to establish all claims and damages by a preponderance of the evidence"); see generally *Gamero v. Koodo Sushi Corp.*, 272 F Supp 3d 481 [SDNY 2017]).

An employee is covered by the minimum wage and overtime provisions of the FLSA only if he or she, in any workweek, is: (i) "engaged in commerce or in the production of goods for commerce;" or (ii) "employed in an enterprise engaged in commerce or in the production of goods for commerce."  (29 U.S.C. §§ 206(a), 207(a)(1); see also *Quintero v. Anjudiromi Constr. Corp.*, 2018 WL 1027716, at *2 [SDNY 2018]).  "The two categories are commonly referred to as 'individual' and 'enterprise' coverage, respectively."  (*Jacobs v. N.Y. Foundling Hosp.*, 577 F3d 93, 96 [2d Cir 2009]).

Here, Plaintiff is not asserting individual coverage under the FLSA, which would require him to establish that he was "performing work involving or related to the movement of persons or things . . . among the several States or between any State and any place outside thereof." (*Owusu v. Corona Tire Shop, Inc*., 2010 WL 4791629, at *2 [EDNY 2010] (quoting 29 C.F.R. § 779.103)). "Activities that 'simply affect or indirectly relate to interstate commerce' are insufficient to plead individual coverage." (*Jones v. SCO Family of Servs*., 202 FSupp 3d 345, 351 [SDNY 2016] (quoting *Li v. Zhao*, 35 F Supp 3d 300, 308 [EDNY 2014])). For jurisdiction under the individual coverage theory to lie, a "substantial part" of the employee's work must relate to interstate commerce. (*Owusu*, 2010 WL 4791629, at *2).

Parking lot attendants have been found not to meet the requirements for individual coverage under the FLSA. (See, *Herrera v. Genao*, 16 Civ. 4297 (ER) [SDNY Jul 5, 2018] ("Plaintiff has put forward no evidence that the cars parked in the lot were engaged in interstate commerce. There is simply nothing in the record before the Court that would allow it to conclude that Plaintiff is covered by the FLSA")).

Here, the applicability of the FLSA to Plaintiffs' employment depends on whether SAM DAR and AD PARKING were an "enterprise engaged in commerce or in the production of goods for commerce" during the period of Plaintiffs' employment. (29 U.S.C. §§ 206(a), 207(a)(1)). On this issue, Plaintiff bears the burden. (*Ethelberth v. Choice Sec. Co*., 91 FSupp 3d 339, 354 [EDNY 2015]).

Under the FLSA, an "enterprise engaged in commerce or in the production of goods for commerce" is an entity that (i) "has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person;" and (ii) "whose

16

annual gross volume of sales made or business done is not less than $500,000[.]"  (29 U.S.C. §

203(s)(1)(A)(i-ii)).

### III.     SUMMARY JUDGMENT SHOULD BE GRANTED TO DEFENDANTS, WHO HAVE MET THEIR BURDEN OF DEMONSTRATING THAT THERE IS NO QUESTION OF MATERIAL FACT WITH REGARD TO THE FLSA'S INAPPLICABILITY TO THIS ACTION. AND WHETHER THE DEFENDANTS'ANNUAL INCOME WAS UNDER $500,000

A.     An employer is liable for wage violations under the FLSA "if it hires an employee

who either: 1) is engaged in commerce or in the production of goods for commerce or 2) is

employed by an enterprise engaged in interstate commerce or in the production of goods for

interstate commerce." (See *Valdez v. H & S Rest. Operations, Inc*., 2016 WL 3079028, at *2

[EDNY 2016], (Report and Recommendation), adopted by 2016 WL 3087053 [EDNY 2016]).

An "enterprise engaged in interstate commerce" is an entity "whose annual gross volume of sales

made, or business done is not less than $500,000" and has employees that engage in interstate

commerce. (29 U.S.C. § 203(s)(1); *Valdez*, 2016 WL 3079028, at *2,  accord *Koszkos v. Janton*

*Industries, Inc*., 2016 WL 4444329, * 4 [EDNY 2016]).

B.     Enterprise Coverage

Under Department of Labor regulations, whether an employer meets the above commerce

criteria is "determined on an annual basis" and is satisfied if the employer meets the gross sales

requirement and "regularly and recurrently has at least two or more employees engaged in . .

.activities" provided for under the Act.  (29 C.F.R. § 779.238). T he regulation states that "an

enterprise that has employees engaged in such activities only in isolated or sporadic occasions,

will not meet this condition." (Id). Surpassing this threshold, however, "is relatively easy to

establish." (*Rocha v. Bakhter Afghan Halal Kababs, Inc*., 44 F. Supp.3d 337, 346 [EDNY

2014]). Unlike individual coverage, enterprise coverage does not require "the employee . . . to be

involved in an activity that affects interstate commerce."  (*Boekemeier*, 86 F. Supp. 2d at 285 (citations omitted).

Several courts in the Second Circuit have found that the question of whether defendants in a FLSA action meet the statutory definition of "enterprise engaged in commerce" is not a jurisdictional question, but rather goes to the merits of the claim.  (*See Jia Hu Qian v. Siew Foong Hui*, 2012 WL 1948820, at *2 [SDNY 2012]) ("The question of whether or not Defendants actually are an 'enterprise engaged in commerce' within the meaning of 29 U.S.C. § 203(s)(1) is an issue that goes to the merits of Plaintiff['s] claims rather than the Court's subject matter jurisdiction." (quoting *Velez v. Vassallo*, 203 FSupp 2d 312, 332 [SDNY 2002]); *Monterossa v. Martinez Rest. Corp.*, 2012 WL 3890212, at *3 [SDNY 2012] ("The question of whether or not Defendants actually are 'an enterprise engaged in commerce' within the meaning of 29 U.S.C. § 203(s)(1) is an issue that goes to the merits of Plaintiffs' claims rather than [to] the Court's subject matter jurisdiction." (alteration omitted) (quoting *Velez*, 203 FSupp2d at 332)); *Benitez v. F & V Car Wash, Inc.*, 2012 WL 1414879, at *1 [EDNY 2012] ("[T]he question of whether a defendant qualifies as an enterprise under the FLSA is not a jurisdictional issue, but an element that a plaintiff must establish in order to prove liability." (collecting cases)); *Romero v. Jocorena Bakery, Inc.*, 2010 WL 4781110, at *3 [EDNY 2010] ("While plaintiffs will have to ultimately prove that defendants grossed more than $500,000 in annual sales in order to be successful on their FLSA claims, the Court 'has jurisdiction over plaintiffs' FLSA claims irrespective of whether plaintiffs can ultimately prevail on the merits.'" (quoting *Padilla v. Manlapaz*, 643 F Supp 2d 298, 301 [EDNY 2000]); ("[T]here is nothing in the text of the FLSA that expresses a congressional intent to make the $500,000 requirement jurisdictional in nature.").

The regulations promulgated by the Labor Department permit the use of records maintained for tax purposes to be used in computing the annual dollar volume.  (See 29 C.F.R. § 779.266 (b)).  Defendants have produced their respective corporate tax returns (Collectively **EXHIBITS "16-19"**).   There is no evidence before this Court that suggests that Defendants' tax returns are inaccurate.  Hence, the submitted tax returns are sufficient to establish Defendants' annual gross revenue.  (See *Li v. Zhao*, 35 F Supp 3d at 306 ("It is not enough for [plaintiff] to argue that the tax returns did not credibly report the restaurant's gross sales, when considered alongside its costs, without furnishing concrete and affirmative evidence to support the conclusion that the restaurant's gross sales were more than $500,000 every year.") (internal quotation marks omitted); *Li v. Cheng*, 2012 WL 1004852, at *5–6 [EDNY 2012] (granting the defendants' summary judgment motion, because "Plaintiffs' opposition to [this motion] attacks the accuracy of [the restaurant's tax returns] . . . but they have offered no evidence to support this assertion"); cf. *Grant v. All Star Baby Safety, Inc.*, 2016 WL 3746565 [EDNY 2016] (stating tax returns can be considered in determining whether the FLSA's $500,000 threshold has been met)).

District courts in the Second Circuit routinely address whether there were material issues of fact regarding the defendants' income, on Rule 56 motions for summary judgment.  (See *Alvarez v. 40 Mulberry Rest., Inc.*, 2012 WL 4639154, at *4 [SDNY 2012] (extending discovery and granting defendant leave to move for summary judgment "on the issue of whether Asia Roma was an 'enterprise engaged in commerce' during the years it employed Alvarez"); *Yang Li v. Ya Yi Cheng*, 2012 WL 1004854, at *4 [EDNY 2012] (granting summary judgment to defendants after finding "no evidence that defendant Lucky Grand Hunan Chinese Restaurant had gross revenues in excess of $500,000"), report and recommendation adopted, 2012 WL 1004852 [EDNY 2012]; *Xelo v. Mavros*, 2005 WL 2385724, at *3–4 [EDNY 2005] (granting

summary judgment after finding that "defendants have met their burden of demonstrating that there is no question of material fact)).

Here, Plaintiffs have failed to submit any evidence to establish that corporate Defendants grossed more than $500,000 in annual sales on either an individual or collective basis.  To the contrary, Corporate Defendants have produced their respective Federal Tax returns for 2014 - 2017 that irrefutably demonstrate that they have each failed to respectively reach even $200,000 per annum in gross revenues. The following summary of **EXHIBITS "16-19"** illustrates the utter futility and lack of merit of Plaintiffs' claims that Defendants meet the requirements to be deemed an enterprise in interstate commerce.

| CORPORATION | YEAR | ANNUAL REVENUE | BATE STAMP NO. |
|---|---|---|---|
| FIH ENTERPRISES K-1 | 2014 | 131,869 | DEF 0125 DEF 0124 |
| FIH ENTERPRISES K-1 | 2015 | 137,994 | DEF 0115 DEF 0120 |
| FIH ENTERPRISES K-1 | 2016 | 127,556 | DEF 0105 DEF 0110 |
| FIH ENTERPRISES K-1 | 2017 | 156,112 | DEF 0095 DEF 0100 |
| SAM DAR K-1 | 2014 | 3406 | DEF 0134 DEF 0139 |
| SAM DAR K-1 | 2015 | 40,725 | DEF 0141 DEF 0146 |
| SAM DAR K-1 | 2016 | 85,604 | DEF 0148 DEF 0153 |
| SAM DAR K-1 | 2017 | 112,713 | DEF 0155 DEF 0160 |
| PEAK | 2015 | 96,762 | DEF 0169 |

20

| | | | |
|---|---|---|---|
| K-1 | | | DEF 0174 |
| PEAK | 2016 | 98,697 | DEF 0176 |
| K-1 | | | DEF 0181 |
| PEAK | 2017 | 100,572 | DEF 0183 |
| K-1 | | | DEF 0188 |
| PEAK | 2018 | 108,533 | DEF 0190 |
| K-1 | | | DEF 0196 |
| AD PARKING | 2015 | 141,176 | DEF 0315 |
| K-1 | | | DEF 0320 |
| AD PARKING | 2016 | 129,329 | DEF 0366 |
| K-1 | | | DEF 0371 |
| AD PARKING | 2017 | 132,924 | DEF 0417 |
| K-1 | | | DEF 0422 |

In conclusion, there is no evidence before this Court that would allow a jury to conclude that Defendants had gross revenue of at least $500,000 during the alleged Class period, and therefor was subject to the FLSA's overtime requirements during those three [3] years. Accordingly, all FLSA claims should be dismissed, as a matter of law.

## IV.    PLAINTIFFS' STATE LABOR LAW CLAIMS SHOULD BE DISMISSED

If this court determines that Plaintiffs' FLSA claim fail, there is no longer any independent basis for federal jurisdiction in this action. Although the Court has the discretion to exercise supplemental jurisdiction over Plaintiffs' remaining NYLL claims, see 29 U.S.C. § 1367(a), it may decline to do so as resolution of the state claim would require the determination of additional factual and legal issues.  (See 28 U.S.C. § 1367(c)(3) ("The district court may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."); *N.Y. Mercantile Exch., Inc. v. Intercontinental Exch.,Inc*., 497 F3d 109, 119 [2d Cir 2007] ( holding that dismissal of remaining

21

state claims after the dismissal of federal claims is particularly appropriate where the resolution

of the state law claims entails resolving additional legal and factual issues). "While discovery has

been completed and the instant case proceeded to the summary judgment stage, it does not

appear that any discovery would need to be repeated if [Plaintiff's] pendent claim [] [was]

brought in state court." (*Tishman v. The Associated Press*, 2007 WL 4145556 at \*9 [SDNY Nov

19, 2007]). Moreover, "'[s]ince [New York CPLR § 205] allows a plaintiff to recommence a

dismissed suit within six months without regard to the statute of limitations,' plaintiff [] will not

be prejudiced by the dismissal of [the NYLL] claim []." (Id.) (quoting *Trinidad v. N.Y. City Dept.*

*of Corr.*, 423 F Supp 2d 151, 169 [SDNY 2006]).  Accordingly, Plaintiffs' NYLL claims should

be dismissed without prejudice.

## V.     DEFENDANTS ARE NOT JOINT EMPLOYERS OF PLAINTIFFS

Defendants concede that AMETEPE and SABALA were employed by SAM DAR and

that BOADI was employed by AD PARKING.

Plaintiffs, however, seek to impose liability upon all corporate and individually named

Defendants, under the "joint employer" doctrine.  As the Second Circuit has recognized, the

determination of joint employer status is rarely appropriate to make at the summary judgment

stage, "[b]ecause of the fact-intensive character of a determination of joint employment."

(*Barfield*, 537 F 3d at 143–44; see also *Zheng*, 355 F 3d at 76 n 13 (noting "fact-intensive

character of the joint employment inquiry")).

The FLSA contemplates the existence of joint employer relationships. For example,

"[w]here the employee performs work which simultaneously benefits two or more employers[ ]

... a joint relationship generally will be considered to exist in situations such as[ ] ... [w]here one

employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee."  (29 C.F.R. § 791.2(b)(2)).

Courts determine whether a joint employer relationship exists "based on the 'circumstances of the whole activity' viewed in light of 'economic reality.'"  (*Zheng v. Liberty Apparel Co.*, 355 F 3d 61, 71 [2d Cir 2003] (internal citations omitted); see also *Goldberg v. Whitaker House Coop., Inc.*, 366 US 28, 81 S Ct 933, 6 L Ed 2d 100 [1961] (holding that the "economic reality" should be used to determine the employment relationship)).  In assessing the totality of the circumstances, courts have traditionally considered four factors, i.e., "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." (*Carter v. Dutchess Community College*, 735 F2d 8, 12 [2d Cir1984] (quoting *Bonnette v. California Health & Welfare Agency*, 704 F 2d 1465, 1470 [9th Cir 1983]); see also *Morrison v. Int'l Programs Consortium, Inc.,* 253 F 3d 5, 11 [DC Cir 2001]). Depending on the circumstances, the inquiry should not be limited to these factors.  In order to determine an entity's "functional control" over the employee, the Second Circuit has looked at the following factors:

> (1) whether [the entity's] premises and equipment were used for the plaintiffs' work; (2) whether the [entity] had a business that could or did shift as a unit from one putative joint employer to another; (3) the extent to which plaintiffs performed a discrete line-job that was integral to [the entity's] process of production; (4) whether responsibility under the contracts could pass from one subcontractor to another without material changes; (5) the degree to which the [entity] or [its] agents supervised plaintiffs' work; and (6) whether plaintiffs worked exclusively or predominately for the [entity].

(*Zheng*, 355 F 3d at 72).

## A.   Defendants KHAN and KHANDWALLA

Individual Defendants KHAN and KHANDWALLA maintain no ownership interest in SAM DAR or AD PARKING.

The evidence overwhelmingly demonstrates that KHAN and KHANDWALLA did not exercise operational control over Plaintiffs, and thus were not their employer. They did not hire and fire employees. They were not involved in setting schedules or other conditions of employment. There is no evidence that they were involved in disciplining employees or monitoring attendance. They were not involved in setting compensation or making payments. Nor were they directly responsible for maintaining employment records. In sum, as a matter of law, KHAN and KHANDWALLA do not qualify as "employers" of Plaintiffs under the definitions set forth in both the FLSA and NYLL. Defendants' alleged status as "employer" fails to meet the "economic realities test" when considering the "totality of the circumstances."

**B.    Defendants ANJUM and MAJEED**

The sole shareholder and officer of SAM DAR is NAVEED ANJUM. The sole shareholder and officer of AD PARKING is ZAFAR MAJEED.

With respect to these individual Defendants, for an individual to be an "employer," there must be more than just "[e]vidence that [the] individual is an owner or officer of a company, or otherwise makes corporate decisions that have nothing to do with an employee's function.... Instead, to be an 'employer,' an individual defendant must possess control over a company's actual 'operations' in a manner that relates to a plaintiff's employment." (*Irizarry v. Catsimatidis*, 722 F 3d 99, 109 [2d Cir 2013]). Indicia of such control include "involvement in a company in a manner that affects employment-related factors such as workplace conditions and operations, personnel, or compensation." (Id).

The second area of inquiry identified in *Irizarry* is whether the power of the putative individual employer was "hypothetical" or "actual. (Id. at 106).  As the Circuit explained, "[o]wnership, or a stake in a company, is insufficient to establish that an individual is an

24

'employer' without some involvement in the company's employment of the employees." (Id. at

111).

Plaintiffs cannot sustain their burden under the "economic realities test.  **(See Exhibits**

**"20-24")**.  The testimony of Plaintiff BOADI is shockingly representative of the total lack of

functional control exercised by the individual defendants in the daily operations of the parking

garages.

> Q. So was there someone at AD Parking that would supervise you during those times that
> you were working during your shift?
> A. While I was there, I was the one in charge until my supervisor or my superior comes
> around.
> Q. Who was your superior?
> A. Mustafa Ali.
> Q. How do you spell it? A. M-U-S-T-A-F-A.
> Q. So Ali Mustafa?
> A. Exactly.
> Q. So in other words, for each shift each day you were alone?
> A. Yes.
> Q. Until Ali picked up the money?
> A. Exactly.
> Q. So no one was supervising you during that time?
> A. Yes.
> Q. Do you know who owned AD Parking?
> A. From what I was told, Fayyaz Khan was the overall boss.  I can't tell you if he was the
> owner.  He was the overall boss.  He was in charge of the parking lots.
> Q. Did you ever meet Mr. Fayyaz Khan?
> A. Yes, I met him maybe two or three times.

**(Boadi Deposition, Exhibit "15" Pg. 24).**

## C.    Corporate Defendants

Although the Plaintiffs ask the Court to apply the "integrated enterprise test" to argue that

all Defendant corporate entities were essentially a single entity, the Second Circuit has declined

to apply this test to determine joint employer liability.  (See *Hart v. Rick's Cabaret Int'l, Inc.*, 967

F. Supp. 2d 901, 940 n.16 [SDNY 2013]).  As the Court explained in *Chen v. TYT E. Com.*,

2012 WL 5871617, at *3 [SDNY 2012] "[t]he Second Circuit has not yet spoken . . . on whether

25

the integrated enterprise/single employer doctrine applies to hold a parent company liable as an

employer for violations of the FLSA." ; see also *Salomon v. Adderley Indus., Inc*., 960 F. Supp.

2d 502, 2013 WL 4308569 [SDNY 2013]).

The courts to apply the integrated enterprise doctrine have held that it only "applies in

'extraordinary circumstances' where plaintiff demonstrates 'sufficient indicia of an

interrelationship between the immediate corporate employer and the affiliated corporation to

justify the belief on the part of an aggrieved employee that the affiliated corporation is jointly

responsible for the acts of the immediate employer.'"  (*Morangelli v. Chemed Corp*., 922 F Supp

2d 278, 285 [EDNY 2013] (quoting *Herman v. Blockbuster Entm't Grp*., 18 F Supp 2d 304, 308

[SDNY1998]), reconsideration denied in part, 2013 WL 1212790 [EDNY 2013]). Plaintiffs

cannot make that showing; nor, drawing all inferences in defendants' favor, can they adduce

sufficient evidence to oblige a jury to conclude that FHI and PEAK exercised "control of labor

relations" over plaintiffs so as to make it a single, integrated enterprise with SAM DAR and AD

PARKING.

In summary, we submit that Plaintiff is unable to provide sufficient facts which would

enable the court to apply the economic reality test to each Defendant.  Specifically, plaintiff has

not provided "factual allegations as to how the events that gave rise to this lawsuit were allocated

[among] the [five] defendants . . . [or] how his employment was handled generally."  (See

*Escobedo v. Metal Protective Coating Professionals, Inc*., 2013 WL 6504675, at *2 [SD Tex

2013]). At least some facts of the employment relationship must be set forth in order to make out

a facially plausible claim of joint employer liability under the FLSA. Based upon this record,

Plaintiff is legally incompetent to set forth sufficient factual averments to support a showing that

defendants were his joint employers.

## CONCLUSION

Summary Judgment should be granted to Defendants, who have met their burden of demonstrating that there is no question of material fact with regard to the FLSA's inapplicability to this action and whether the Defendants' annual income was under $500,000.

The district court should decline to exercise supplemental jurisdiction over Plaintiffs' New York Labor Law claims, because it has dismissed all FLSA claims over which it has original jurisdiction.

Dated: March 6, 2020

BLAU, LEONARD LAW GROUP, LLC

By:

Steven Bennett Blau
Shelly A. Leonard
23 Green Street, Suite 303
Huntington, NY 11743
(631) 458-1010
sblau@blauleonardlaw.com
sleonard@blauleonardlaw.com

*Attorneys for Defendants*