**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:   5/5/2020
```

**Ametepe et al.,**

**Plaintiffs,**

-against-

**Peak Time Parking, Corp. et al.,**

**Defendants.**

1:18-cv-05384 (PAE) (SDA)

<u>REPORT AND RECOMMENDATION</u>

**STEWART D. AARON, UNITED STATES MAGISTRATE JUDGE.**

**TO THE HONORABLE PAUL A. ENGELMAYER, UNITED STATES DISTRICT JUDGE:**

Before the Court are a motion for summary judgment filed by corporate Defendants Peak Time Parking, Corp. ("Peak Time"), FIH Enterprise Inc. ("FIH"), Sam Dar Enterprises Inc. ("Sam Dar") and AD Parking Inc. ("AD Parking"), as well as individual Defendants Zafar Majeed ("Majeed"), Fayyaz Khan ("Khan"), Naveed Anjum ("Anjum") and Mustafa Ali Khandwalla ("Khandwalla") (collectively, "Defendants") seeking dismissal of this action in its entirety (Defs.' Not. of Mot., ECF No. 81), and a motion for partial summary judgment filed by Plaintiff James Ametepe ("Ametepe"), on behalf of himself and the opt-in Plaintiffs (collectively, "Plaintiffs"), as to certain issues and affirmative defenses. (Pl. Not of Mot., ECF No. 85.)

For the reasons set forth below, I respectfully recommend that Defendants' motion for summary judgment be DENIED and that Plaintiffs' motion for partial summary judgment be GRANTED IN PART and DENIED IN PART.

## BACKGROUND

This action involves alleged violations of federal and state wage laws by the corporate Defendants which, according to Plaintiffs, act "as a single entity in the business of operating parking garages in the City of New York." *Ametepe v. Peak Time Parking, Corp.*, No. 18-CV-05384 (PAE) (SDA), 2019 WL 3000920, at *1 (S.D.N.Y. July 10, 2019). Plaintiffs claim to have worked as parking attendants at these garages, which they assert were owned and operated by the individual Defendants. (*See* Am. Compl., ECF No. 48, ¶ 2.) The undisputed and disputed facts that are relevant to this Report and Recommendation are addressed in the Discussion Section below.

## PROCEDURAL HISTORY

On June 14, 2018, Ametepe filed his Complaint against Defendants Peak Time, FIH and Sam Dar, Majeed, Khan, Anjum and Khandwalla alleging violations of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"). (Compl., ECF No. 7, ¶ 1.) On June 19, 2018, Pedro Sabala ("Sabala") filed a consent to join this action. (Sabala Consent, ECF No. 6.) On September 12, 2018, Emmanuel Boadi ("Boadi") filed a consent to join this action. (Boadi Consent, ECF No. 19.) On June 18, 2019, Plaintiffs filed a motion to amend his Complaint to add AD Parking as a defendant. (Mot. to Amend, ECF No. 41.) On July 10, 2019, this Court granted Plaintiffs' motion to amend. *Ametepe*, 2019 WL 3000920, at *2.

On July 15, 2019, Ametepe filed his Amended Complaint. (*See* Am. Compl.) On July 31, 2019, Defendants filed their Answer to the Amended Complaint. (Ans. to Am. Compl., ECF No. 55.) Among the affirmative defenses asserted by Defendants were that Ametepe "was a 'faithless servant' who misappropriated and diverted cash belonging to his employer, SAM DAR, for his own use" (*id*. ¶ 62) (Fourth Defense); that Plaintiffs' claims are "barred, in whole or in part,

because Defendants, at all times, acted in good faith to comply with the FLSA and NYLL, and had reasonable grounds for believing that they followed the FLSA and NYLL" (*id*. ¶ 68) (Tenth Defense); and that "Defendants assert a lack of willfulness or intent to violate the FLSA and NYLL as a defense to any claim for liquidated damages" (*id*. ¶ 69) (Eleventh Defense).

Following completion of discovery, pursuant to a schedule set by the Court, Defendants filed their motion for summary judgment seeking dismissal of this action and Plaintiffs filed their cross-motion for partial summary judgment. In their motion for partial summary judgment, Plaintiffs seek the following relief: (1) a finding that "Defendants Anjum, Majeed, and Khan are individually liable as Plaintiffs' employers under the FLSA and the NYLL, as Anjum employed Ametepe and Sabala, Majeed employed Boadi, and Khan also employed Ametepe earlier in his employment at a different location;" (2) a finding that "Defendants Peak Time, Sam Dar, Majeed, and Anjum are liable as joint employers for work that Plaintiffs Ametepe and Sabala performed at the parking garage located at 1872 East Tremont Street, Bronx, New York ('1872 Tremont'), under the FLSA and the NYLL;" (3) a finding that "Defendants Peak Time, Sam Dar, FIH, and AD Parking are liable to Plaintiffs as a single enterprise of parking garages for work that Plaintiffs performed at the garages operating at 1872 Tremont, 331 East 132nd Street, Bronx, New York, and 1475 Macombs Road, Bronx, New York, under the FLSA and the NYLL;" (4) a finding that "Defendants are liable for damages amounting to $5,000.00 for failing to provide Plaintiffs Ametepe and Sabala with wage statements on each payday as required under NYLL § 195(3);" (5) dismissal of Defendants' Fourth, Tenth and Eleventh Defenses; and (6) a finding that "that Defendants' failed to maintain accurate records as a matter of law, warranting application of the

burden-shifting standard at trial established by *Anderson v. Mt. Clemens Pottery*, 328 U.S. 680 (1946) and its progeny." (Pl. Not of Mot. at 2.)

## SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986). The moving party has the initial burden of demonstrating the absence of a disputed issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 321-23 (1986). "A fact is 'material' for these purposes when it 'might affect the outcome of the suit under the governing law.'" *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (quoting *Anderson*, 477 U.S. at 248). A dispute concerning material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (quoting *Anderson*, 477 U.S. at 248).

"In resolving cross-motions for summary judgment, 'each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration.'" *Automated Irrigation Controls, LLC v. Watt Stopper, Inc.*, No. 18-CV-02435 (GHW), 2019 WL 4256388, at *5 (S.D.N.Y. Sept. 9, 2019) (quoting *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001)).

Federal Rule of Civil Procedure 56(a) permits a party to make a motion for partial summary judgment regarding only certain issues in the case. Rule 56(a) provides that "[a] party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought." Fed. R. Civ. P. 56(a). "The purpose of a partial summary judgment motion is to promote efficiency and narrow the scope of a trial to the

issues that are reasonably disputed." *In re Refco Inc. Sec. Litig.*, No. 07-MD-01902 (JSR) (S.D.N.Y. Mar. 25, 2013) (citation omitted).

## DISCUSSION

### I.    Defendants' Motion For Summary Judgment

In their motion for summary judgment, Defendants seek dismissal of Plaintiffs' FLSA claims[1] on the basis that, as a matter of law, Defendants do not operate "an enterprise engaged in commerce."[2] (Defs.' MSJ Mem., ECF No. 82, at 17-21.) Defendants assert that "Plaintiffs have failed to submit any evidence to establish that corporate Defendants grossed more than $500,000 in annual sales on either an individual or collective basis." (*Id*. at 20.) Defendants have submitted federal tax returns for the corporate Defendants which they contend "irrefutably demonstrate that [the corporate defendants] have each failed to respectively reach even $200,000 per annum in gross revenues." (*Id*. at 20-21.) Plaintiffs argue that there is an issue of fact as to whether the corporate Defendants operated as a single, integrated enterprise and that Plaintiffs have submitted evidence that two of the corporate defendants had revenue in excess of $500,000, such that Defendants' motion for summary judgment should be denied. (*See* Pl. MSJ Opp. Mem., ECF No. 93, at 3-4.)

The Court has reviewed the summary judgment record and finds that Plaintiffs have raised issues of fact regarding whether the Defendants operated as a single, integrated enterprise

---

[1] Defendants' motion for dismissal of the NYLL claims is dependent on dismissal of the FLSA claims. If the Court were to dismiss the FLSA claims, then Defendants request that the Court decline to exercise supplemental jurisdiction over the NYLL claims and dismiss the action in its entirety. (*See* Defs.' MSJ Mem. at 27.)

[2] An "enterprise engaged in interstate commerce" is an entity that has employees who engage in interstate commerce and "whose annual gross volume of sales made or business done is not less than $500,000." 29 U.S.C. § 203(s)(1)(A).

and whether the corporate Defendants' stated yearly income as set forth in their tax returns is reliable. First, with respect to whether the Defendants operated as a single, integrated enterprise, as set forth in Discussion Section II.B.2., *infra*, the Court finds that Sam Dar and Peak Parking operated as joint employers, such that their revenues should be combined in determining whether the $500,000 revenue threshold has been met. *See Yu Wei Cao v. Miyama, Inc.*, No. 15-CV-00266 (JS) (ARL), 2019 WL 4279407, at *9 (E.D.N.Y. Sept. 10, 2019) (since two defendants found to be "single employer for FLSA purposes . . . their gross annual sales may be combined to determine whether they satisfy the $500,000 enterprise-coverage threshold"). Moreover, as set forth in Discussion Section II.C.2., *infra*, the Court finds that there are issues of fact as to whether Peak Time, Sam Dar, FIH And AD Parking operated as single enterprise, in which case all four of the corporate Defendants' revenues would be combined.

There also are issues of fact regarding the reliability of the corporate Defendants' tax returns. For example, Plaintiffs refer the Court to Defendants' response to Interrogatory No. 4, which was sworn to by Anjum, stating that Defendants are not in possession, custody or control of any balance sheets, income statements, cash statements or operating reports for the corporate defendants or the parking garages that the Defendants operated. (*See* Maguire Decl. Ex. D, ECF No. 94-4, at 3.) Thus, there are no documents that corroborate Defendants' tax returns. Moreover, Plaintiffs have raised issues with respect to the accuracy of the tax returns. At his deposition in this case, Anjum testified he always grossed more than $10,000 per week at his parking garages since 2014, which is in excess of what the tax returns reflect. (*See* Maguire Decl. Ex. F, ECF No. 94-6, at 173.) When Anjum, who previously had been convicted for falsifying documents, was asked about underreporting of certain other amounts on his tax return, he

asserted his Fifth Amendment right not to incriminate himself and declined to answer. (*See id*. at 209-10, 213.)

Plaintiffs also submitted a Declaration from Boadi, which states that, at AD Parking alone, he was aware of about ten monthly customers with vans who paid $350 per month; about 30 monthly customers with SUVs who paid $225 per month; and about 45 monthly customers with sedans who paid $180 per month. (Boadi Decl., ECF No. 95, ¶¶ 5-7.) The Declaration also states that Boadi received $7,000 to $10,000 each week from daily patrons during his night shift and that his counterparts on the day shift received similar amounts. (*See id*. ¶ 9.) Thus, based upon the Boadi Declaration, revenues at AD Parking alone would have been well in excess of $500,000.[3]

Plaintiffs' evidence raises genuine issues of material fact as to whether the corporate Defendants, which are alleged to have operated as a single, integrate enterprise, earned over $500,000 in gross sales for the years in question, such that summary judgment should be denied. *See Rocha v. Bakhter Afghan Halal Kababs, Inc.*, 44 F. Supp. 3d 337, 350 (E.D.N.Y. 2014) ("Plaintiffs' evidence challenges the reliability of the Restaurant's stated yearly income as set forth in the tax returns, and therefore raises genuine issues of material fact as to whether the Restaurant earned over $500,000 in gross sales for each of the years from 2010 through 2012."); *De Xiong Pan v. Wei Plumbing, Inc*., No. 12-CV-01781 (MHD), 2013 WL 6053496, at *12 (S.D.N.Y. Nov. 13, 2013) (denying summary judgment motion, stating that "[t]o require that plaintiffs make

---

[3] The Court is aware of Defendants' contention that Boadi worked for less than a month as an employee of AD Parking (*see* Discussion Section II.A.2.b., *infra*), which, if true, would undermine Boadi's credibility regarding AD Parking's revenues. However, Plaintiffs assert that Boadi worked with AD Parking for a period in excess of one year (*see id*.), and the Court cannot decide this factual dispute as a matter of law.

a precise showing of defendant's gross annual revenues, despite defendants' blatantly inadequate record-keeping, would unfairly penalize plaintiffs for their employer's poor business practices and perversely incentivize bad record-keeping among employers hoping to shield themselves from FLSA claims"); *Monterossa v. Martinez Rest. Corp.*, No. 11-CV-03689 (JMF), 2012 WL 3890212, at **3-4 (S.D.N.Y. Sept. 7, 2012) (finding that plaintiffs met their burden at summary judgment stage, despite defendants' submission of tax returns showing annual gross revenues below $500,000, by proffering evidence that tax returns were "inconsistent with Defendants' own records," as well as with sworn statements of employees as to defendants' daily gross revenue); *Amaya v. Superior Tile & Granite Corp.*, No. 10-CV-04525, 2012 WL 130425, at **4-5 (S.D.N.Y. Jan. 17, 2012) (denying summary judgment and finding defendant's tax returns "entirely unreliable" where they were "utterly inconsistent with a business employing six to eight workers full time, each earning $35,000 or more annually," and where defendant "operated largely a cash business").

Accordingly, the Court recommends that Defendants' motion for summary judgment be denied.

## II.   **Plaintiffs' Motion For Partial Summary Judgment**

There are issues of fact in this case regarding the periods of time during which Plaintiffs worked for the Defendants, as well as the hours worked by Plaintiffs. Thus, Plaintiffs have moved only for partial summary judgment as to certain aspects of their case. Each aspect of Plaintiffs' motion for partial summary judgment is considered in turn below.

## A. **Individual Liability Of Anjum, Majeed And Khan**

In opposing Defendants' motion for summary judgment, Plaintiffs argue that "Defendants, to say the least, fail to establish that no genuine issue of fact exists as to Anjum's, Majeed's [and] Khan's . . . liability as employers under the FLSA/NYLL and summary judgment in Defendants' favor is thus plainly improper on this issue." (Pl. MSJ Opp. Mem. at 10.) However, in their own motion for partial summary judgment, Plaintiffs ask the Court to affirmatively find as a matter of law that Anjum, Majeed and Khan are liable as individual employers.[4] (*See* Pl. PMSJ Mem., ECF No. 86, at 3-7.)

### 1. **Legal Standards**

The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). This is an expansive definition with "striking breadth." *Hernandez v. JRPAC Inc.*, No. 14-CV-04176, 2016 WL 3248493, at *21 (S.D.N.Y. June 9, 2016) (citing *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992)). An individual simultaneously may have multiple "employers" for the purposes of the FLSA. *See* 29 C.F.R. § 791.2(a).

"[W]hether an employer-employee relationship exists for purposes of the FLSA should be grounded in 'economic reality rather than technical concepts.'" *Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132, 141 (2d Cir. 2008) (quoting *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961)). The determination of whether the individual Defendants are Plaintiffs' employers is to be based on "the circumstances of the whole activity." *Rutherford Food Corp. v.*

---

[4] Plaintiffs assert that Anjum employed Ametepe and Sabala, Majeed employed Boadi and Khan employed Ametepe earlier in time at a different location. (*See* Pl. Not. of Mot. at 2.)

*McComb*, 331 U.S. 722, 730 (1947); *see also Barfield*, 537 F.3d at 141-42 (employment is "to be determined on a case-by-case basis by review of the totality of the circumstances"). "Above and beyond the plain language, moreover, the remedial nature of the statute further warrants an expansive interpretation of its provisions so that they will have 'the widest possible impact in the national economy.'" *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999) (quoting *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984)). "When it comes to 'employer' status under the FLSA, control is key." *Lopez v. Acme Am. Envtl. Co.*, No. 12-CV-00511 (WHP), 2012 WL 6062501, at *3 (S.D.N.Y. Dec. 6, 2012); *see also Herman*, 172 F.3d at 135 ("[C]ontrol of employees is central to deciding whether appellant should be deemed an employer.").

The "economic reality" test compels courts to consider a range of factors in resolving whether a defendant qualifies as an employer under the FLSA, including "whether the individual: '(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'" *Gillian v. Starjem Rest. Corp.*, No. 10-CV-06056 (JSR), 2011 WL 4639842, at *4 (S.D.N.Y. Oct. 4, 2011) (citing *Carter*, 735 F.2d at 12). "No one of the four factors standing alone is dispositive. Instead the 'economic reality' test encompasses the totality of circumstances, no one of which is exclusive." *Herman*, 172 F.3d at 139 (internal citation omitted).[5]

---

[5] The statutory standard for employer status under the NYLL is nearly identical to that of the FLSA. *Compare* 29 U.S.C. § 203(d) ("'Employer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee . . .."), *with* N.Y.L.L. § 190(3) ("'Employer' includes any person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service."). "Neither the New York Court of Appeals nor the Second Circuit has decided whether the tests for 'employer' status are the same under the FLSA and the NYLL. However, district courts in this Circuit consistently have interpreted the definition of 'employer' under the New York Labor

"The question of whether an individual is an employer under the FLSA is a mixed question of law and fact; 'the existence and degree of each relevant factor lend[s] itself to factual determinations. Therefore, individual employer liability is rarely suitable for summary judgment.'" *Jin Dong Wang v. LW Rest., Inc.*, 81 F. Supp. 3d 241, 254 (E.D.N.Y. 2015) (citing *Berrios v. Nicholas Zito Racing Stable, Inc.*, 849 F. Supp. 2d 372, 393 (E.D.N.Y. 2012)).

### 2. Application

#### a. Anjum As Employer Of Ametepe And Sabala

Based upon the undisputed facts, the Court finds that Anjum was an "employer" of Plaintiffs Ametepe and Sabala under the FLSA and NYLL. Defendants admit that Anjum is the sole owner of Sam Dar and that Sam Dar is the licensed operator of a parking garage located at 1872 East Tremont. (Def. 56.1 Resp., ECF No. 92, ¶¶ 1, 5.) They further admit that Sam Dar employed Ametepe as a parking attendant at 1872 East Tremont from about July 2014 to November 2016 and employed Sabala as a parking attendant at the same location from about November 2015 to January 2016 and from about April 2016 to November 2016. (Anjum Decl., ECF No. 83-23, ¶¶ 3-4.) Defendants admit that Anjum was responsible for hiring, managing and paying Ametepe and Sabala and for managing Ametepe's and Sabala's records. (Def. 56.1 Resp. ¶¶ 16-19, 23-26.) Finally, Defendants admit that Anjum was responsible for supervising parking attendants' day-to-day activities, paying parking attendants their wages, and hiring parking attendants at the parking garage located at 1872 Tremont, including Plaintiffs Ametepe and Sabala. (*Id*. ¶ 35.)

---

Law coextensively with the definition used by the FLSA." *Inclan v. N.Y. Hosp. Grp., Inc.*, 95 F. Supp. 3d 490, 511 (S.D.N.Y. 2015) (citations and internal quotation marks omitted).

Based upon the economic reality, the Court finds that Anjum was an employer of Ametepe and Sabala. To be clear, however, the Court does not find that Anjum is "individually liable" as an employer of Ametepe and Sabala, as Plaintiffs seek. (*See* Pl. Not. of Mot. at 2.) Any determination of liability must await trial.

### b.  Majeed As Employer Of Boadi

Certain material facts regarding Plaintiff Boadi's employment by Majeed are disputed such that it cannot be found as a matter of law that Majeed was an "employer" of Boadi under the FLSA and NYLL. Defendants admit that Majeed is the sole owner of AD Parking and that AD Parking is the licensed operator of a parking garage located at 331 East 132nd Street, Bronx, New York ("331 East 132nd"). (Def. 56.1 Resp. ¶¶ 3, 6.) They further admit that Boadi worked for AD Parking at 131 East 132nd and that Majeed was involved in hiring him. (*Id*. ¶¶ 28, 32.) However, while Boadi contends that he worked at 131 East 132nd from August 2013 through at least November 2013 and that he "returned for a second period of work" from July 2016 to April 2017 (*see* Pl. 56.1 Stmt., ECF No. 89, ¶¶ 29-31), Defendants contend that Boadi was a probationary employee who worked for a period of less than one month in January 2017, since Boadi failed to provide proper work authorization documents. (Majeed 7/2/19 Decl., ECF No. 83-20, ¶¶ 5-6.) Defendants also submitted in opposition to Plaintiffs' partial summary judgment motion a letter from Boadi stating that he had failed to provide work authorization documents to AD Parking and that he worked there for less than a month. (*See* Boadi 2/3/17 Ltr., ECF No. 83-13.) One of the factors that courts consider under the economic reality test is the "permanence or duration of [plaintiff's] working relationship." *See Fernandez v. Kinray, Inc*., 406 F. Supp. 3d 256, 261 (E.D.N.Y. 2018) (citation omitted). In these circumstances, where there is evidence that Boadi's working

relationship with Majeed lasted for a period of less than a month, it cannot be said that Majeed exercised the requisite degree of control over Boadi to find as a matter of law that Majeed was Boadi's employer.

### c.  Khan As Employer Of Ametepe

Certain material facts regarding Plaintiff Ametepe's employment by Khan are disputed such that it cannot be found as a matter of law that Khan was an "employer" of Ametepe under the FLSA and NYLL. Defendants admit that Khan is the sole owner of FIH and that FIH was the licensed operator of a parking garage located 1475 Macombs Road, Bronx, New York ("1475 Macombs"). (Def. 56.1 Resp. ¶¶ 4, 7.) They further admit that Ametepe's work at 1475 Macombs included cleaning the sidewalk, cleaning inside the parking garage and bringing coffee and food. (*Id*. ¶¶ 11-12.) Although Ametepe contends that he regularly worked as a parking attendant at 1475 Macombs (*see* Am. Compl. ¶ 22), and that Khan managed the parking attendants at 1475 Macombs (which Khan admittedly did) (Def. 56.1 Resp. ¶ 36), Defendants contend that Ametepe did not work as a parking attendant and only worked odd jobs "once in a while." (*See* Khan Dep. Tr., ECF No. 87-3, at 31-33.) In these circumstances, where there is evidence of a lack of permanence to Ametepe's working relationship with Khan, it cannot be said that Khan exercised the requisite degree of control over Ametepe to find as a matter of law that Khan was Ametepe's employer.

### B.  Joint Employer Liability Of Peak Time, Sam Dar, Majeed And Anjum For Work Of Ametepe And Sabala At 1872 Tremont

Plaintiffs ask the Court to find as a matter of law that Peak Time, Sam Dar, Anjum and Majeed are liable as joint employers of Ametepe and Sabala for their work at the 1872 Tremont location.  (*See* Pl. PMSJ Mem. at 7-18.)

1.  **Legal Standards**

"When two or more entities operate as joint employers of a given worker, each employer is jointly and severally liable for the FLSA violations of all other joint employers." *Fernandez v. HR Parking Inc.*, 407 F. Supp. 3d 445, 450-51 (S.D.N.Y. 2019) (citation omitted). "A joint employment relationship does not exist if the alleged joint employers 'are acting entirely independently of each other and are completely disassociated with respect to the employment of a particular employee.'" *Id.* (citation omitted). The same legal standards that apply whether an individual is an "employer" under the FLSA and NYLL apply to whether a person or entity is a "joint employer." *See id.* at 451 (discussing Second Circuit law "for determining whether a person or entity is an employer, including a joint employer"). Thus, the Court incorporates here by reference the legal standards contained in Discussion Section II.A.1., *supra*.

2.  **Application**

Plaintiffs assert that Defendants Peak Time, Sam Dar, Majeed and Anjum had functional control over Ametepe and Sabala, such that each of these Defendants is a joint employer of Ametepe and Sabala for their work at 1872 Tremont. (*See* Pl. PMSJ Mem. at 10.) Defendants admit that Ametepe and Sabala worked as parking attendants at 1872 Tremont. (Anjum Decl. ¶¶ 3-4.) They also admit that Sam Dar employed them there. (*See id*.) The Court already has found that Anjum was the employer of Ametepe and Sabala. (*See* Discussion Section II.A.2.a., *supra*.) Thus, Sam Dar and Anjum are joint employers of Ametepe and Sabala, and the only question remaining is whether Peak Time and Majeed were joint employers with Sam Dar and Anjum.

With respect to whether Peak Time is a joint employer of Ametepe and Sabala, both Peak Time and Sam Dar used the Consumer Affairs License of Reyer Parking Corp. ("Reyer Parking") to

run the garage at 1872 Tremont. (Def. 56.1 Resp. ¶ 43.) Peak Time had a written contract as a tenant at 1872 Tremont to operate a parking garage at 1872 Tremont that Majeed signed. (*Id*. ¶ 45.) Majeed (the sole owner of Peak Time) had a verbal agreement with Anjum (the sole owner of Sam Dar) to operate the parking garage at 1872 Tremont. (*See id*. ¶¶ 1-2, 46-47.) Majeed acted as a "middleman" and took the cash generated from operating the 1872 Tremont garage from Anjum and delivered it to Reyer Parking. (*See id*. ¶¶ 63-64.) The economic reality is that Sam Dar and Anjum were acting as agents for Peak Time in operating the garage at 1872 Tremont, where Ametepe and Sabala worked. In these unique circumstances, the Court finds that Peak Time was a joint employer of Ametepe and Sabala. *See Teri v. Spinelli*, 980 F. Supp. 2d 366, 375 (E.D.N.Y. 2013) ("no reasonable jury considering the 'economic realities' of the OMS/Spinelli/collection agent relationship could find that Spinelli was not Plaintiffs' joint employer under the FLSA and NYLL"). To be clear, however, the Court does not find that Peak Time is "liable as [an] employer[]" of Ametepe and Sabala, as Plaintiffs seek. (*See* Pl. Not. of Mot. at 2.) Any determination of liability must await trial.

Majeed is the remaining person who Plaintiff seeks to have the Court find to be a joint employer of Ametepe and Sabala. However, Majeed submitted a Declaration stating that "he never had any involvement in the hiring, firing, methods and rates of compensation, hours worked, discipline, supervision or fixing of the terms and conditions of employment of any employee of [Sam Dar]," including Ametepe or Sabala. (Majeed 10/22/18 Decl., ECF No. 83-21, ¶ 7.) Given this evidence, the Court declines to find as a matter of law that Majeed was a joint employer of Ametepe or Sabala.

**C.   Liability Of Peak Time, Sam Dar, FIH And AD Parking As Single Enterprise**

Plaintiffs seek a finding that "Defendants Peak Time, Sam Dar, FIH, and AD Parking are liable to Plaintiffs as a single enterprise of parking garages for work that Plaintiffs performed at the garages operating at 1872 Tremont, 331 East 132nd Street, Bronx, New York, and 1475 Macombs Road, Bronx, New York, under the FLSA and the NYLL." (Pl. Not. of Mot. at 2.)

**1.   Legal Standards**

Distinct but closely affiliated entities may be treated as a single employer for FLSA purposes where "the related activities performed (either through unified operation or common control) by any person or persons [are] for a common business purpose and includes all such activities whether performed in one or more establishments or by one or more corporate or other organizational units . . .." 29 U.S.C. § 203(r). "Courts use a three-part test to determine when an entity is an enterprise: '(1) the entity or entities must engage in related activities, (2) performed through unified operation or common control, (3) for a common business purpose.'" *Berezueta v. Royal Crown Pastry Shop*, No. 12-CV-04380, 2014 WL 3734489, at *4 (E.D.N.Y. July 28, 2014) (citation omitted).

**2.   Application**

As set forth above, the Court already has found that Peak Time and Sam Dar are joint employers of Ametepe and Sabala. (*See* Discussion Section II.B.2., *supra*.) The record, however, is insufficient to make a finding that FIH and AD Parking operated as a single enterprise with Peak Time and Sam Dar. The only two statements contained in Plaintiffs' 56.1 Statement that mention FIH provide that Khan is the sole owner of FIH and that Khan operated a parking garage on behalf of FIH located at 1475 Macombs, both of which Defendants admit. (*See* Def. 56.1 Resp. ¶¶ 4, 7.)

Thus, the Court cannot find as a matter of law that FIH was operated as a single enterprise with Sam Dar, Peak Time and AD Parking.

There are several references to AD Parking in Plaintiffs' 56.1 Statement, but they are not sufficient to establish as a matter of law that AD Parking was operated as a single enterprise with Peak Time and Sam Dar. Plaintiffs state that Majeed was the sole owner of AD Parking and that he closed it in March 2019. (*See* Def. 56.1 Resp. ¶¶ 3, 9.) While Plaintiffs contend that Majeed operated the parking garage at 331 East 132nd on behalf of AD Parking, Defendants contend that AD Parking was the licensed operator of that garage. (*See id*. ¶ 6.) Plaintiffs also have statements regarding Boadi's employment with AD Parking. (*See id*. ¶¶ 28, 78.) The only 56.1 statement mentioning AD Parking that suggests a common enterprise is that Peak Time, Sam Dar and AD Parking all have the same principal place of business, but Defendants dispute that statement. (*See id*. ¶ 69.) Defendants cite to tax returns for the three entities that show the same address for Peak Time and Sam Dar, but a different address for AD Parking. (*See* Sam Dar Tax Return, ECF No. 83-16; Peak Time Tax Return, ECF No. 83-17; AD Parking Tax Return, ECF No. 83-19.) In these circumstances, there are issues of fact that must be resolved at trial, and the Court cannot find as a matter of law that AD Parking was operated as a single enterprise with Sam Dar and Peak Time.

### D. **Defendants' Liability For Failing To Provide Wage Statements To Ametepe And Sabala**

Plaintiffs seek a finding that Defendants are liable for damages amounting to $5,000.00 for failing to provide Plaintiffs Ametepe and Sabala with wage statements on each payday as required under Section 195(3) of the New York Labor Law. (Pl. Not. of Mot. at 2.) Section 195(3) provides that an employer must "furnish each employee with a statement with every payment

of wages, listing the following:  the dates of work covered by that payment of wages;  name of employee;  name of employer;  address and phone number of employer;  rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other;  gross wages;  deductions;  allowances, if any, claimed as part of the minimum wage;  and net wages." NYLL § 195(3). In addition, statements provided to non-exempt employees also must include "the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked." *Id*.

The Court finds that there are genuine issues of material fact regarding Plaintiffs' claim for failure to provide wage statements. Defendants disputed Plaintiffs' 56.1 statement that "Anjum never provided any wage statement, or any sort of payment record to Plaintiffs Ametepe or Sabala when he paid them every week in cash" by citing to two exhibits. (*See* Def. 56.1 Resp. ¶ 88.) Defendants cite to an exhibit that contains 44 pages of payroll records for Ametepe, with the employer listed as Reyer Parking, which (as set forth above) is the entity that holds the Consumer Affairs License used by both Peak Time and Sam Dar (Ametepe Payroll Records, ECF No. 83-3), and to an exhibit that contains 29 pages of payroll records for Sabala, with the employer listed as Sam Dar. (Sabala Payroll Records, ECF No. 83-4.) These records, which were initialed or signed by Ametepe and Sabala, reflect their dates of work, rates of pay, wages and the number of regular and overtime hours worked. Plaintiffs fail to explain why or how these records are not sufficient under Section 195(3) of the New York Labor Law and the Court thus denies Plaintiffs' partial summary judgment based upon that statute.[6] *See Wallace v. J.M. Romich*

---

[6] Defendants admit that certain payroll records (like the ones submitted in opposition to Plaintiffs' partial summary judgment motion) were lost and no longer are available. (*See* Def. 56.1 Resp. ¶¶ 80-83.) However, if the payroll records provided to Plaintiffs qualify as wage statements under the New York

*Enterprises, Inc.*, No. 17-CV-06424 (CJS), 2018 WL 3023391, at *10 (W.D.N.Y. June 18, 2018) ("There is a triable issue of fact as to whether Defendant provided Plaintiff with an accurate statement of the number of hours that he worked.").

### E.   **Defendants' Fourth, Tenth And Eleventh Affirmative Defenses**

Plaintiffs seek dismissal of Defendants' Fourth, Tenth and Eleventh Defenses, which are discussed below. "An affirmative defense can be dismissed on a summary judgment motion when that defense is unsupported by any evidence in the record." *Lifeguard Licensing Corp. v. Ann Arbor T-Shirt Co., LLC*, No. 15-CV-08459 (LGS), 2018 WL 3364388, at *1 (S.D.N.Y. July 9, 2018).

### 1.   **Fourth Affirmative Defense – Faithless Servant**

In their Fourth Affirmative Defense, Defendants assert that Ametepe "was a 'faithless servant' who misappropriated and diverted cash belonging to his employer, SAM DAR, for his own use." (Ans. to Am. Compl. ¶ 62.)

### a.   **Legal Standards**

"Under New York law, '[o]ne who owes a duty of fidelity to a principal and who is faithless in the performance of his services is generally disentitled to recover his compensation.'" *Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 466 (S.D.N.Y. 2008) (citing *Phansalkar v. Andersen Weinroth & Co., L.P.*, 344 F.3d 184, 200, 203 (2d Cir. 2003) (internal quotation omitted)). An employer is entitled to recover compensation paid to a faithless servant upon a showing (1) that the employee's disloyal activity was related to the performance of his duties,

---

Labor Law, Plaintiffs would not have a viable claim, even if some of those records were lost by Defendants, or there at least would be an issue of fact regarding the viability of such a claim.

and (2) that the disloyalty permeated the employee's service in its most material and substantial part. *Id*. (citation omitted).

### b.  Application

In support of their faithless servant defense against Plaintiff Ametepe, Defendants cite to the sworn deposition testimony of Defendant Anjum who asserts that he personally witnessed Ametepe stealing cash. Anjum testified that "sometimes" Ametepe would take cash from customers and "put the money in his own pocket." (Anjum Dep. Tr., ECF No. 91-2, at 218.) Plaintiffs proffer various undisputed facts that go to the weight of the evidence (for example, that Defendants have no documentary evidence to support their defense and that Anjum never called the police (*see* Def. 56.1 Resp. ¶¶ 90-91)). However, "[w]hen considering a motion for summary judgment, a court must construe the evidence in the light most favorable to the nonmoving party, drawing all inferences in that party's favor." *Jeffreys*, 426 F.3d at 553. The Court does not weigh the evidence or the credibility of witnesses. *See id*. (citing *Hayes v. N.Y. City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996) ("In applying th[e] [summary judgment] standard, the court should not weigh evidence or assess the credibility of witnesses.")).

Here, construing the evidence in the light most favorable to Defendants, Ametepe, who was working as a parking attendant, sometimes was pocketing money paid for parking services when customers paid in cash. If true, this disloyalty plainly related to the performance of Ametepe's duties and could be found by a reasonable jury to have permeated his service in a

material and substantial manner. Thus, the Court recommends that Plaintiffs' motion to dismiss the Fourth Affirmative Defense be denied.[7]

> ## 2. Tenth And Eleventh Affirmative Defenses – Good Faith And Lack Of Willfulness

In their Tenth Affirmative Defense, Defendants assert Plaintiffs' claims "are barred, in whole or in part, because Defendants, at all times, acted in good faith to comply with the FLSA and NYLL, and had reasonable grounds for believing that they followed the FLSA and NYLL." (Ans. to Am. Compl. ¶ 68.) In their Eleventh Affirmative Defense, Defendants assert "a lack of willfulness or intent to violate the FLSA and NYLL as a defense to any claim for liquidated damages." (*Id*. ¶ 69.)

> ### a. Legal Standards

An employer who violates the minimum compensation provisions of the FLSA and NYLL is liable for both past due wages and, in addition, an equal amount of liquidated damages. *See* 29 U.S.C. § 216(b); N.Y. Lab. L. § 198(1-a). A court, however, has discretion to deny liquidated damages where the employer shows that, despite its failure to pay appropriate wages, it acted in subjective "good faith" with objectively "reasonable grounds" for believing that its acts or omissions did not violate the FLSA. *See Garcia v. Saigon Mkt. LLC*, No. 15-CV-09433 (VSB), 2019 WL 4640260, at *11 (S.D.N.Y. Sept. 24, 2019). "The employer carries the burden of 'establishing, by plain and substantial evidence, subjective good faith and objective reasonableness.'" *Bowrin*

---

[7] This case is distinguishable from *Torres* (cited by Plaintiffs in their moving memorandum (Pl. PMSJ Mem. at 23-24)), where the court dismissed a faithless servant counterclaim, since in that case the counterclaimant offered no admissible evidence to support its counterclaim. *See Torres*, 628 F. Supp. 2d at 470 ("Aside from the inadmissible [investigatory] report, Gristede's offers no evidence of Torres's alleged misconduct."). Here, by contrast, the sworn testimony of Anjum constitutes admissible evidence.

*v. Catholic Guardian Soc'y*, 417 F. Supp. 2d 449, 471 (S.D.N.Y. 2006) (quoting *Reich v. S. New Eng. Telecomms. Corp.*, 121 F.3d 58, 71 (2d Cir. 1997)). "Whether an employer undertook 'objectively reasonable' steps to comply with the FLSA is a factual issue that depends on several factors, including the size and sophistication of the employer and any efforts the employer made to comply with the applicable regulations." *Franco v. Jubilee First Ave. Corp.*, No. 14-CV-07729 (SN), 2016 WL 4487788, at *16 (S.D.N.Y. Aug. 25, 2016) (citation omitted).

The statute of limitations for "a cause of action arising out a willful violation" of the FLSA is three years. 29 U.S.C. § 255(a). For non-willful violations, the statute of limitations is two years. *Id*. To prove a willful violation, an employee must establish "that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). Reckless disregard "involves actual knowledge of a legal requirement, and deliberate disregard of the risk that one is in violation." *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 937-38 (S.D.N.Y. 2013) (internal quotation marks and citation omitted). "[W]hether unlawful conduct is on the one hand negligent or unreasonable, or on the other hand knowing or reckless, '[c]ourts in this Circuit have generally left the question of willfulness to the trier of fact.'" *Inclan*, 95 F. Supp. 3d at 503 (quoting *Ramirez v. Rifkin*, 568 F. Supp. 2d 262, 268 (E.D.N.Y. 2008) (collecting cases)).

### b.  Application

Plaintiffs principally base their motion for partial summary judgment dismissing the Tenth and Eleventh Affirmative Defenses on the undisputed facts that two of the Defendants, Anjum and Majeed, never took any steps to ascertain whether their payment practices complied with

federal or state wage laws. (*See* Def. 56.1 Resp. ¶¶ 99-100, 102.) Defendants respond by arguing that these issues should be left to the jury. (*See* Def. PMSJ Opp. Mem. at 12.)

The Court finds that it is premature to determine whether any of the Defendants acted in willfully and/or in good faith. No determination of liability has yet been made. Indeed, notably, Plaintiffs have not even sought summary judgment as to liability. Thus, on the present record, no determination of any of the Defendants' subjective good faith can be made. *See Murray v. City of New York*, No. 16-CV-08072 (PKC), 2020 WL 615053, at *16 (S.D.N.Y. Feb. 10, 2020) (since FLSA liability not yet found, court held that "premature to reach the question of whether any hypothetical violation occurred in good faith" and grounded in defendant's "reasonable belief" that it complied with law). For the same reasons, it is premature to reach the issue of willfulness. *See id*. at *17 ("For the reasons just explained concerning any award of liquidated damages, the parties' summary judgment [motions] on willfulness triggering the applicability of a three-year limitations period [are] also denied."). Thus, I recommend that Plaintiffs' motion for partial summary judgment dismissing the Tenth and Eleventh Affirmative Defenses be denied.

**F.   Burden-Shifting**

As a sixth and final part of their partial summary judgment motion, Plaintiffs seek a finding that "that Defendants failed to maintain accurate records as a matter of law, warranting application of the burden-shifting standard at trial established by *Anderson v. Mt. Clemens Pottery*, 328 U.S. 680 (1946) and its progeny."[8] (Pl. Not of Mot. at 2.)

---

[8] "[I]f an employer keeps inaccurate or inadequate records, the plaintiff need only offer a reasonable estimate of his damages. . . . Once the employee has offered his estimate, the burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negate the reasonableness of the inference to be drawn from the employee's evidence." *McGlone v. Contract Callers, Inc.*, 49 F. Supp. 3d 364, 371 (S.D.N.Y. 2014) (citations omitted).

Defendants have produced to Plaintiffs and filed with the Court numerous payroll records. (*See* Ametepe Payroll Records, ECF No. 83-3; Sabala Payroll Records, ECF No. 83-4.) Although Plaintiffs dispute the accuracy of these records, and Defendants admit that records prior to certain dates no longer are available (*see* Def. 56.1 Resp. ¶¶ 80-83), it cannot be found as a matter of law that "Defendants failed to maintain accurate records," as Plaintiffs posit. (*See* Pl. Not of Mot. at 2.) Thus, the premise upon which Plaintiffs seek burden-shifting is flawed and I recommend that Plaintiffs' motion for partial summary judgment on this issue be denied.

## CONCLUSION

For the reasons set forth above, I respectfully recommend that Defendants' motion for summary judgment be DENIED and that Plaintiffs' motion for partial summary judgment be GRANTED IN PART and DENIED IN PART. With respect to that portion of Plaintiffs' partial summary judgment that I recommend be granted, I recommend the following findings: (1) that Anjum was an employer of Ametepe and Sabala; and (2) that Peak Time was a joint employer of Ametepe and Sabala, along with Sam Dar and Anjum.

**SO ORDERED.**

DATED:      New York, New York
            May 5, 2020

_____
STEWART D. AARON
United States Magistrate Judge

*               *               *

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections (to those portions other than with

respect to the motion to strike), pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. *See also* Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D) or (F)). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any response to objections, shall be filed with the Clerk of the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Engelmayer.

**FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); *Thomas v. Arn,* 474 U.S. 140 (1985).