UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JAMES AMETEPE, on behalf of himself, individually, and on behalf of all others similarly-situated,

                                Plaintiffs,

-v-

PEAK TIME PARKING, CORP., FIH ENTERPRISE INC., SAM DAR ENTERPRISES INC., AD PARKING INC., ZAFAR MAJEED, FAYYAZ KHAN, NAVEED ANJUM, and MUSTAFA ALI KHANDWALLA,

                                Defendants.

---

18 Civ. 5384 (PAE) (SDA)

<u>OPINION & ORDER</u>

---

PAUL A. ENGELMAYER, District Judge:

      Plaintiff James Ametepe ("Ametepe"), on behalf of himself and two opt-in plaintiffs, Pedro Sabala and Emmanuel Boadi (collectively, "Plaintiffs"), brings this action against corporate defendants Peak Time Parking, Corp. ("Peak Time"), FIH Enterprise Inc. ("FIH"), Sam Dar Enterprises Inc. ("Sam Dar"), and AD Parking Inc. ("AD Parking"), as well as individual defendants Zafar Majeed ("Majeed"), Fayyaz Khan ("Khan"), Naveed Anjum ("Anjum"), and Mustafa Ali Khandwalla ("Khandwalla") (collectively, "Defendants").  Plaintiffs claim to have worked as parking attendants at garages allegedly owned and operated by the defendants.  Plaintiffs argue that defendants violated (1) the overtime provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a); (2) the overtime provisions of the New York Labor Law ("NYLL"), NYLL § 160; (3) NYLL's wage-statement requirement, NYLL § 195(3); and (4) NYLL's wage-notice requirement, NYLL § 195(1).

      Defendants have moved for summary judgment on all claims.  Dkt. 81.  Plaintiffs have moved for partial summary judgment, Dkt. 85, seeking a holding that (1) Anjum, Majeed, and

1

Khan are individually liable as plaintiffs' employers; (2) Peak Time, Sam Dar, Majeed, and Anjum are liable as joint employers of Ametepe and Sabala; (3) Peak Time, Sam Dar, FIH, and AD Parking are liable to plaintiffs as a single enterprise; (4) all defendants are liable for damages for failing to provide wage statements to Ametepe and Sabala; (5) dismissals are merited of defendants' fourth, tenth, and eleventh affirmative defenses, based, respectively, on the faithless-servant doctrine as to Ametepe, defendants' asserted good-faith compliance with the FLSA and NYLL, and defendants' asserted lack of willfulness for any FLSA violations; and (6) defendants are liable for failing to maintain accurate records regarding plaintiffs' wages and hours, warranting a burden shift at trial, Dkt. 86 ("Pl. Mem.") at 1–2.

Before the Court is the detailed Report and Recommendation of the Honorable Stewart D. Aaron, United States Magistrate Judge, recommending that defendants' motion for summary judgment be denied in full and that plaintiffs' motion for partial summary judgment be granted in part and denied in part.  Dkt. 99 ("Report").  Plaintiffs have objected to four of the Report's recommendations.  Dkt. 100 ("Pl. Obj.").  This decision resolves these objections.  It adopts the Report in its entirety, save that it departs from the Report on two aspects as to which plaintiffs objected.

I.  **Background**[1]

   A.  **Factual Background**

   The Court adopts the Report's account of the facts, to which neither party objects.  *See* Report at 2.  The following summary captures the undisputed facts necessary to the issues at hand.

   Anjum is the sole owner of Sam Dar, the licensed operator of a parking garage located at 1872 East Tremont Ave.  Def. Counter 56.1 ¶¶ 1, 5.  Sam Dar employed Ametepe as a parking attendant at 1872 East Tremont from about July 2014 to November 2016, and Sabala as an attendant at the same garage from about November 2015 to January 2016 and again from about April 2016 to November 2016.  Anjum Decl. ¶¶ 3–4.  Anjum was responsible for hiring, managing, and paying Ametepe and Sabala, and for handling records related to them.  Pl. 56.1

---

[1] This factual account draws from the parties' submissions in support of and in opposition to their motions for summary judgment, including defendants' Local Rule 56.1 statement, Dkt. 84 ("Def. 56.1"), and counter-statement, Dkt. 92 ("Def. Counter 56.1"), the declarations (and accompanying exhibits) of Zafar Majeed, Dkt. 83-20 ("Majeed Decl."), and Naveed Anjum, Dkt. 83-23 ("Anjum Decl."), and the payroll records of James Ametepe, Dkt. 83-3 ("Ametepe Payroll R."), and Pedro Sabala, Dkt. 83-4 ("Sabala Payroll R."), plaintiffs' Local Rule 56.1 statement, Dkt. 89 ("Pl. 56.1"), and counter-statement, Dkt. 96 ("Pl. Counter 56.1"), and the declaration (and accompanying exhibits) of Jeffrey R. Maguire, Dkt. 87, including the transcripts of the depositions of Naveed Anjum, Dkt. 87-1 ("Anjum Dep. Tr."), and Zafar Majeed, Dkt. 87-2 ("Majeed Dep. Tr.").

Citations to a party's Rule 56.1 statement incorporate by reference the documents cited therein. Where facts stated in a party's Rule 56.1 statement are supported by testimonial or documentary evidence, and are denied by a conclusory statement by the other party without citation to conflicting testimonial or documentary evidence, the Court finds such facts true.  *See* S.D.N.Y. Local Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party."); *id.* at 56.1(d) ("Each statement by the movant or opponent . . . controverting any statement of material fact[ ] must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c).").

¶¶ 16–19; Def. Counter 56.1 ¶¶ 16–19, 23–26.  Anjum was also responsible for supervising attendants' day-to-day activities and paying wages to them.  Pl. 56.1 ¶ 35.

Anjum asserts that he personally witnessed Ametepe taking cash from customers and putting "the money in his own pocket," rather than giving it to his employer.  Anjum Dep. Tr. at 218.  Defendants do not have evidence corroborating this accusation, which Anjum did not report to the police.  Pl. 56.1 ¶¶ 90–91.

Majeed is the sole owner of AD Parking, which is the licensed operator of a parking garage located at 331 East 132nd Street, Bronx, New York.  *Id.* ¶¶ 3, 6.

Boadi worked for AD Parking at this location.  Majeed participated in hiring him.  *Id.* ¶¶ 28, 32.

### B.  Procedural History

On June 14, 2018, plaintiffs commenced this action.  Dkt. 1.  On September 21, 2018, defendants filed an answer.  Dkt. 21.  On July 15, 2019, plaintiffs filed an amended complaint, Dkt. 48 ("Am. Compl."), which the defendants answered on July 31, 2019, Dkt. 55.

In October 2019, the parties notified the Court they would be filing summary judgment motions; the Court referred these to Judge Aaron.  Dkt. 67.  On March 6, 2020, defendants filed a motion for summary judgment, Dkt. 81, accompanied by a memorandum of law, Dkt. 82 ("Def. Mem."), attached exhibits, Dkt. 83, and a Local Rule 56.1 statement, Def. 56.1.  On March 6, 2020, plaintiffs filed a motion for partial summary judgment, Dkt. 85, accompanied by a memorandum of law, Pl. Mem., and a Local Rule 56.1 statement, Pl. 56.1.  On March 30, 2020, defendants filed a memorandum of law in opposition to plaintiffs' motion, Dkt. 90 ("Def. Reply"), and counter Rule 56.1 statement, Def. Counter 56.1.  The same day, plaintiffs filed a memorandum of law in opposition to defendants' motion, Dkt. 93 ("Pl. Opp'n"), and counter

Rule 56.1 statement, Pl. Counter 56.1.  On April 14, 2021, each side filed a reply.  *See* Dkts. 97 ("Pl. Reply"), 98 ("Def. Reply").

On May 5, 2020, Judge Aaron issued the Report.  Dkt. 99.  It recommends denying defendants' motion for summary judgment in its entirety because plaintiffs identified evidence raising issues of material fact as to whether, as plaintiffs claimed, (1) defendants operated as a single, integrated enterprise; and (2) defendants met the $500,000 enterprise-revenue threshold under the FLSA.  *Id.* at 5–8.

As to plaintiffs' motion, the Report recommended granting two aspects of it: (1) finding Anjum an "employer" of Ametepe and Sabala, *id.* at 11–12; and (2) finding Peak Time, Sam Dar, and Anjum joint employers of Ametepe and Sabala, *id.* at 13–15.  The Report, however, found material disputes of fact precluding summary judgment as to whether (1) Majeed is an employer of Boadi; (2) Khan is an employer of Ametepe; (3) Majeed joins Peak Time, Sam Dar, and Anjum as joint employers of Ametepe and Sabala; (4) Peak Time, Sam Dar, FIH, and AD Parking are a single enterprise of parking garages; (5) defendants are liable for failure to provide Ametepe and Sabala with wage statements on each payday; (6)–(8) dismissal is warranted on the affirmative defenses that Ametepe was a faithless servant; that defendants attempted in good faith to comply with the FLSA and NYLL; and that the defendants did not willfully violate these statutes; and (9) defendants failed to maintain accurate records as a matter of law.  *Id.* at 8–25.

On May 19, 2020, plaintiffs timely filed their objections.  *See* Pl. Obj.  These challenge Judge Aaron's recommendations that plaintiffs' motion for summary judgment be denied as to the first, fifth, sixth, and seventh issues above.  *See id.* at 2–4.  Defendants did not object to the Report or respond to plaintiffs' objections.

## II.    Applicable Legal Principles

### A.    Review of a Report and Recommendation

In reviewing a report and recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When specific objections are made, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997). To accept those portions of the report to which no timely objection has been made, "a district court need only satisfy itself that there is no clear error on the face of the record." *King v. Greiner*, No. 02 Civ. 5810 (DLC), 2009 WL 2001439, at *4 (S.D.N.Y. July 8, 2009) (quoting *Wilds v. United Parcel Serv., Inc.*, 262 F. Supp. 2d 163, 169 (S.D.N.Y. 2003)).

To the extent that the objecting party makes only conclusory or general objections, or simply reiterates the original arguments, the court will review the report and recommendation strictly for clear error. *See Dickerson v. Conway*, No. 08 Civ. 8024 (PAE), 2013 WL 3199094, at *1 (S.D.N.Y. June 25, 2013); *Kozlowski v. Hulihan*, No. 09 Civ. 7583 (RJH) (GWG), 2012 WL 383667, at *3 (S.D.N.Y. Feb. 7, 2012); *Kirk v. Burge*, 646 F. Supp. 2d 534, 538 (S.D.N.Y. 2009) (collecting cases). Further, "[c]ourts generally do not consider new evidence raised in objections to a magistrate judge's report and recommendation." *Tavares v. City of New York*, No. 08 Civ. 3782 (PAE), 2011 WL 5877548, at *2 (S.D.N.Y. Nov. 23, 2011).

### B.    Motions for Summary Judgment

To prevail on a motion for summary judgment, the movant must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The

movant bears the burden of demonstrating the absence of a question of material fact.  In making this determination, the Court must view all facts "in the light most favorable" to the non-moving party.  *Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008).  "Only disputes over facts that might affect the outcome of the suit under the governing law" will preclude a grant of summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## III.    Discussion

The Court has carefully reviewed Judge Aaron's thorough and well-reasoned Report.  As to the portions of the Report that were not objected to, the Court's review has revealed no facial error in their conclusions.  The Court thus adopts the Report as to all aspects to which no party has objected.

Plaintiffs, however, object to several of the Report's recommendations.  First, they argue that the Report erred in holding that disputes of material fact precluded a finding that Majeed is Boadi's individual employer.  *See* Pl. Obj. at 2–3.  Second, they argue that the Report erred in not finding established their wage-statement claim under NYLL § 195(3).  *See id.* at 3.  Third, they argue that the Report erred in declining to recommend dismissal of the affirmative defense that Ametepe was a "faithless servant" of defendants.  *See id.* at 3–4.  Finally, they argue that the Report erred in declining to recommend dismissal of the affirmative defense that defendants made good-faith efforts to comply with the law.  *See id.* at 4.

For the reasons that follow, the Court is persuaded by plaintiffs' first two objections, but not by the third and fourth, as to which the Court adopts the Report's recommendations.

### A.  Was Majeed an Employer of Boadi?

The Report, finding material disputes of fact, recommended denying summary judgment as to whether Majeed was an employer of Boadi.  *See* Report at 12–13.  Defendants admit that

Majeed is the sole owner of AD Parking, the licensed operator of the garage where Boadi worked, and that Majeed was involved in hiring Boadi.  Def. Counter 56.1 ¶¶ 3, 6, 28, 32.  But, although Boadi contends he worked at the garage between August 2013 and November 2013, and during "a second period of work" between July 2016 and April 2017, *see* Pl. 56.1 ¶¶ 29–31, defendants dispute that he was an employee when working there, Def. Counter 56.1 ¶¶ 29–31. Instead, defendants depict Boadi as a probationary employee who worked for under one month, between January 1, 2017 and January 27, 2017, Def. 56.1 ¶¶ 25–26, and whose employment ended when he failed to provide proper work-authorization documents, *see* Majeed Decl. ¶¶ 5–6. Based on the disputed duration and permanence of Boadi's work at Majeed's garage, the Report found it inconclusive whether Majeed exercised the degree of control necessary to be Boadi's employer.  *See* Report at 12–13.  In contesting this finding, plaintiffs argue that, on the undisputed facts, Majeed had direct and operational control of Boadi.  *See* Pl. Obj. at 7.  And, they argue, although the duration and permanence of Boadi's work at the garage would have been germane had there been a dispute over whether Boadi was an independent contractor as opposed to an employee, no party has challenged that Boadi was an employee, nor questioned who his employer was.  *See id.* at 8–10.

Plaintiffs' critique is persuasive.  The FLSA does not provide a "definition that solves problems as to the limits of the employer-employee relationship under the Act."  *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 728 (1947).  "Accordingly, the Court has instructed that the determination of whether an employer-employee relationship exists for purposes of the FLSA should be grounded in 'economic reality rather than technical concepts.'"  *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 141 (2d Cir. 2008) (citing *Goldberg v. Whitaker House Co-op., Inc.*, 366 U.S. 28, 33 (1961)).  Consistent with this, the Second Circuit has held that

whether an employer-employee relationship exists is to be determined case-by-case based on the totality of the circumstances. *See Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 n.1 (2d Cir. 1984). The Circuit has utilized different tests, keyed to economic reality, depending on the precise FLSA issue at hand.

Here, the threshold issue is whether the worker, Boadi, was an employee as opposed to an independent contractor outside the coverage of the Act. As to that issue, the Court evaluates:

> (1) the degree of control exercised by the employer over the workers, (2) the workers' opportunity for profit or loss and their investment in the business, (3) the degree of skill and independent initiative required to perform the work, (4) the permanence or duration of the working relationship, and (5) the extent to which the work is an integral part of the employer's business.

*Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1058–59 (2d Cir. 1988). The Circuit has held that the *Brock* test is the appropriate one to separate independent contractors from employees, while the one set out in *Carter v. Dutchess Community College* is to be used to evaluate whether multiple entities or persons are joint employers of a worker already found to be an employee. *See Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 67–68 (2d Cir. 2003). The *Carter* test inquires whether the asserted joint employer: "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." 735 F.2d at 12. The *Brock* test is better suited to distinguish between independent contractors and employees because the factors it assays "help courts determine if particular workers are independent of *all* employers." *Zheng*, 355 F.3d at 67–68.

Applied here, the *Brock* factors make clear that, notwithstanding his short tenure and probationary status, Boadi was an employee as opposed to an independent contractor. These factors focus on the nature and circumstances of the worker's work. *See Brock*, 840 F.2d at 1059

("The ultimate concern is whether, as a matter of economic reality, the worker[] depend[s] upon someone else's business for the opportunity to render service[s] or [is] in business for [him]sel[f].").

Here, as to the first factor, Majeed exercised a degree of control over Boadi consistent with being an employer:  Majeed was involved in hiring Boadi, *see* Def. Counter 56.1 ¶ 32, and admitted to permitting him to work before receiving work authorization, Majeed Dep. Tr. at 73. He also admitted to supervising employees at AD Parking and paying their wages.  *Id.* at 77. Asked if another person, Ali Khandwalla, supervised Boadi, Majeed responded no, testifying that he had asked Khandwalla to substitute for him only occasionally, but that otherwise, Majeed worked at the garage "almost every day."  *Id.* at 121; *see Ansoumana v. Gristede's Operating Corp.*, 255 F. Supp. 2d 184, 191 (S.D.N.Y. 2003) (first *Brock* factor weighed in favor of finding an employment relationship where defendants "hired, fired, transferred and paid" the plaintiffs).  As to the second factor, no facts suggest any employees at the parking garage had the opportunity for profit or loss, or investment in the business.  Majeed is the sole owner of AD Parking.  *See* Def. Counter 56.1 ¶ 3.  As to the third factor, the degree of skill required to perform Boadi's work as a parking attendant does not suggest he was anything other than an employee.  And as to the fifth factor, the work Boadi performed is such that it is integral to Majeed's business.  Boadi worked 40 hours a week from Monday to Friday for every week that he worked.  Majeed Dep. Tr. at 77.

Of the five *Brock* factors, the only one arguably disfavoring Boadi's employee status is the fourth, "permanence or duration of the working relationship."  But here, this factor does not suggest that Boadi was other than an employee.  Courts analyze an employee's transience in light of the employee's circumstances.  *See Ansoumana*, 255 F. Supp. 2d at 191 (transience of a

worker may "say[] less about the status of the worker than about the nature of the job"). And even when this factor disfavors finding employee status, it is often outweighed. *See, e.g.*, *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 921 (S.D.N.Y. 2013) (duration prong "is entitled to only modest weight in assessing employee status under the FLSA"); *Reich v. Circle C. Invs., Inc.*, 998 F.2d 324, 328–29 (5th Cir. 1993) (finding lack of permanency, but holding other factors, on balance, outweigh this factor). Here, even defendants do not claim that on account of his relatively brief tenure as a parking attendant, Boadi was an independent contractor, as short-duration employments in other employment contexts sometimes suggests. *See, e.g.*, *Gate Guard Servs. L.P. v. Solis*, No. 10 Civ. 91, 2013 WL 593418, at *10–11 (S.D. Tex. Feb. 13, 2013) (finding factor to favor independent-contractor status where the plaintiffs worked on a "project-by-project basis"). Rather, the undisputed evidence is that Boadi's tenure was cut short because he lacked the required work-authorization forms. He is thus akin to an employee who is hired but soon discharged—yet still an employee for that brief period. *See Grant v. HER Imports NY, LLC*, No. 15 Civ. 5100 (DLI) (LB), 2018 WL 3133454, at *7 (E.D.N.Y. Feb. 16, 2018) (brief employment did not indicate that plaintiff was an independent contractor where short tenure was due to plaintiff's resignation). For much the same reasons, Boadi's status as—according to defendants—a probationary employee, Def 56.1 ¶ 26, also does not change this result. Indeed, the Department of Labor has held that probationary employees are covered under the FLSA. *See* U.S. Department of Labor, Wage and Hour Division Fact Sheet # 27: New Businesses Under the Fair Labor Standards Act (FLSA) (rev. July 2008) ("DOL Fact Sheet #27"), http://www.dol.gov/whd/regs/compliance/whdfs27.pdf.

For all these reasons, the Court holds that there is no genuine dispute of fact as to whether Boadi was an employee of the garage at all times he worked there—he was an employee. Once

that determination is made, it is apparent that Majeed, too, was an employer of Boadi.  Majeed is the sole owner of AD Parking, which operates the garage, and Majeed participated in hiring Boadi.  Def. Counter 56.1 ¶¶ 3, 6, 28, 32.  No argument has been made that some alternative person at AD Parking, to the exclusion of Majeed, was Boadi's employer.  *See, e.g.*, Def. Reply at 2–4.  The Court accordingly grants plaintiffs' motion for summary judgment on the issue of whether Majeed was Boadi's employer.

### B.  Wage Statement

The Report recommends denying plaintiffs' motion for summary judgment as to whether Anjum failed to furnish wage statements to Ametepe and Sabala, in violation of the NYLL.  *See* Report at 18.  Plaintiffs aver that "Anjum never provided any wage statement."  *See* Pl. 56.1 ¶¶ 88–89.  In response, defendants cite two exhibits: one containing 44 pages of payroll records for Ametepe and another containing 29 pages of payroll records for Sabala.  *See* Def. Counter 56.1 ¶ 88.  The Report found that these records, initialed or signed by the respective plaintiff, give rise to a factual dispute whether wage statements were properly furnished to plaintiffs. Report at 18.  Objecting to this recommendation, plaintiffs argue that it is undisputed that Anjum did not furnish proper wage statements to Ametepe and Sabala.  Pl. Obj. at 3.  On this point, the Court holds with plaintiffs—on the undisputed facts, no reasonable juror could find that Anjum furnished proper wage statements to Ametepe and Sabala as required under the NYLL.

Section 195(3) of the New York Labor Law requires an employer to:

> furnish each employee with a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages.

NYLL § 195(3).  The sponsors of the legislation intended it to "protect workers' rights and interests" given that "a large number of employees are earning less than minimum wage and others are being paid less than their correct wage."  *Copper v. Cavalry Staffing, LLC*, 132 F. Supp. 3d 460, 468 (E.D.N.Y. 2015) (quoting N.Y. Sponsors. Memo., 2010 S.B. 8380, 233d Leg., 2010 Reg. Sess. (Oct. 28, 2010)).

Plaintiffs' claim under NYLL § 195(3) embeds two issues: whether the documents provided to them qualify as "wage statements," and, if so, whether they were "furnished" to employees.

As for the first, the statutory requirements are clear.  *See Guan Ming Lin v. Benihana N.Y. Corp.*, No. 10 Civ. 1335 (RA) (JCF), 2012 WL 7620734, at *13 (S.D.N.Y. Oct. 23, 2012), *report and recommendation adopted*, 2013 WL 829098 (S.D.N.Y. Feb. 27, 2013) ("The statutory language [of NYLL § 195(3)] clearly and unambiguously explains what the wage statements must contain, what reliefs the employees may seek for receiving inadequate wage statements, and what affirmative defenses the employer may raise.").  Courts have widely found that a missing element disqualified a document as a wage statement.  For instance, in *Junmin Shen v. No. One Fresco Tortillas, Inc.*, the employer was found liable under NYLL § 195(3), in part because the statement did not contain all required information, "such as the restaurant's name and address."  No. 16 Civ. 2015 (RWL), 2018 WL 6712771, at *9 (S.D.N.Y. Nov. 26, 2018); *see also Hernandez v. JRPAC Inc.*, No. 14 Civ. 4176 (PAE), 2016 WL 3248493, at *12 (S.D.N.Y. June 9, 2016) (finding that pay journal was not a wage statement where it lacked employee's rate of pay, designation as a tipped employee, and hours worked); *Severino v. 436 W. LLC*, No. 13 Civ. 3096 (VSB), 2015 WL 12559893, at *9–10 (S.D.N.Y. Mar. 19, 2015) (finding that

employer had not provided employee with proper wage statement because it did not include "allowances, if any, claimed as part of the minimum wage").

As for the second, to "furnish" a statement, the employer must provide each employee with a written statement copy. *See Tacuri v. Nithun Constr. Co.*, No. 14 Civ. 2908 (CBA) (RER), 2015 WL 790060, at *9 (E.D.N.Y. Feb. 24, 2015) ("Employees who do not receive a copy of this written statement with each payment of wages . . .  may recover one hundred dollars in damages . . . ."). The New York Department of Labor ("NYDOL") has opined that employers alternatively can give employees electronic access to their wage statements, giving employees the option to print these themselves, and that such an electronic option satisfies the requirement to "furnish." *See* N.Y. Dep't of Labor Op., RO-08-0096 (Aug. 11, 2008); *see also Mendez v. Int'l Food House Inc.*, No. 13 Civ. 2651 (JPO), 2014 WL 4276418, at *8 (S.D.N.Y. Aug. 28, 2014) (citing to NYDOL opinion as basis to uphold electronic provision of wage statements).

Here, on the undisputed facts, no reasonable juror could conclude that Anjum furnished Ametepe and Sabala with the required wage statements. That is so for two reasons.

First, the payroll documents fall short of qualifying as wage statements. Defendants, as noted, defended against their claim by pointing to payroll records for Ametepe, *see* Ametepe Payroll R., and Sabala, *see* Sabala Payroll R. These were initialed and signed by the respective plaintiffs. Ametepe Payroll R.; Sabala Payroll R. But, although the payroll documents contain most required information—including the dates of work covered, the names of the employee and employer, the employer's address, the hourly rate of pay, and gross earnings—they are missing the employer's phone number and, more important, the employee's net wages. Wage statements must, however, contain all data identified by NYLL § 195(3). *See Hernandez*, 2016 WL

3248493, at \*29–30; *Junmin Shen*, 2018 WL 6712771, at \*9.  Defendants do not dispute the fact

of these omissions.

Second, the evidence does not support that the records were ever "furnished" to the

plaintiffs.  An employer is required to give a copy of the wage statements to its employees, either

in hard copy or electronically; securing their signature on it does not suffice.  *See Tacuri*, 2015

WL 790060, at \*9 (finding that "employees who do not receive a copy" of their wage statement

are entitled to recovery).  Defendants have not adduced any evidence that such occurred, or even

so argued.  And plaintiffs point to contrary evidence—the deposition testimony of Anjum.  *See*

Pl. Mem. at 22.  Asked whether he provided wage statements ("You give them a wage statement

with the cash?"), Anjum said, "They sign the paper.  Just give them the cash."  Anjum Dep. Tr.

at 59.

The Court accordingly finds, on the undisputed evidence, that Anjum failed to furnish

wage statements to Ametepe and Sabala.  These plaintiffs are entitled to summary judgment on

this claim.

### C.  Faithless-Servant Affirmative Defense

The Report recommends denying, on account of a dispute of material fact, plaintiffs'

motion to dismiss the affirmative defense that Ametepe was a "faithless servant" who took cash

from his employers, namely Anjum and Sam Dar.  *See* Report at 20–21.  In asserting this

defense—which would run to Ametepe's claims only—defendants rely on Anjum's testimony

that he saw Ametepe, on multiple occasions, pocket money from customers rather than give it to

his employer.  Anjum Dep. Tr. at 218.

In their Objections, plaintiffs note that there is no corroboration of this claim and that

Anjum never reported any such thefts to the police.  *See* Def. Counter 56.1 ¶¶ 90–91.  They

argue that there is thus insufficient evidence on which a reasonable jury could find that Ametepe engaged in such misconduct, and hence to trigger the faithless-servant doctrine.  Pl. Obj. at 4.  But, as the Report concludes, that is clearly wrong.  A jury could credit Anjum's eyewitness account of theft by Ametepe, and thereby find Ametepe to have been a faithless servant.

Under New York law, an employee who has been faithless in the performance of his services is generally disentitled to recovery.  *See Phansalkar v. Andersen Weinroth & Co., L.P.*, 344 F.3d 184, 200–03 (2d Cir. 2003).  An employer can recover compensation paid to a "faithless servant" if it shows "(1) that the employee's disloyal activity was related to the performance of his duties, and (2) that the disloyalty permeated the employee's service in its most material and substantial part." *Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 466 (S.D.N.Y. 2008) (quoting *Sander v. Madison Square Garden, L.P.*, No. 06 Civ. 589 (GEL), 2007 WL 19339333, at *3 (S.D.N.Y. July 2, 2007)).  That is so even if "the principal suffered no provable damage as a result of the breach of fidelity by the agent." *Phansalker*, 344 F.3d at 200 (quoting *Feiger v. Iral Jewelry, Ltd.*, 41 N.Y.2d 928, 929 (1977)).

Here, as the Report recognized, there is a dispute of fact precluding summary judgment as to whether Ametepe was or was not a "faithless servant."  Anjum testified that Ametepe pocketed cash from customers on numerous occasions.  *See* Anjum Dep. Tr. at 218.  To be sure, Ametepe disputes this claim.  And, as plaintiffs note, Anjum cannot identify any date when such a theft occurred, or point to a contemporaneous outcry of this accusation, such as a report to the police.  *See* Pl. Obj. at 17 (citing Def. Counter 56.1 ¶¶ 93–94, 96).  Plaintiffs note, too, that Anjum does not dispute that "Ametepe never refused to give the money back" when Anjum allegedly "caught him stealing." *Id*. (citing Def. Counter 56.1 ¶¶ 92, 95).

16

Whether Anjum's accusation is credible, however, is the province of the jury. Whether Ametepe engaged in thefts, and in a manner that made out all elements of the faithless-servant doctrine, goes to the credibility and weight of the evidence. Such, as the Report recognized, is not for the Court to resolve, particularly on summary judgment, where a court must construe the evidence in the light most favorable to the nonmovant. *See* Report at 20; *Jeffreys v. City of New York*, 436 F.3d 549, 553 (2d Cir. 2005).

*Torres v. Gristede's Operating Corp.*, on which plaintiffs rely, is easily distinguished. That case dismissed, on summary judgment, a faithless-servant counterclaim for want of admissible evidence. *See* 628 F. Supp. 2d at 469–70 (evidence cited was inadmissible hearsay). Here, in contrast, Anjum's eyewitness testimony as to the alleged thefts is admissible.

Plaintiffs alternatively argue that even if Anjum were credited, Ametepe's lapse consisted of merely "making an error reporting money" and that "forgetting that Plaintiff put money in this pocket does not constitute theft." *See* Pl. Obj. at 19. That argument also fails, because it distorts Anjum's testimony, which squarely describes theft. *See* Dkt. 91-2 ("Anjum Full Dep. Tr.") at 217 ("Actually, he, most of the time, was stealing the money. Like, he didn't report it on the cards that I would give customers. And sometimes we watch it see it."); *id*. at 220–21 ("Sometimes . . . he took the money in the home. He said oh, I forgot to put the money inside the total money amount. So, then we watch, today this guy paid money. Where is the money? 'Oh I forgot.'").

Anjum and Sam Dar thus have adduced sufficient evidence to support this affirmative defense against Ametepe's claim. It will be for the jury to determine whether that defense has been established.

### D.    Good Faith Affirmative Defense

The Report similarly recommends sustaining defendants' affirmative defense that they acted in good faith to comply with the FLSA, on the grounds that, with liability undetermined, it is premature to preclude a finding of good-faith violations.  *See* Report at 23.  Plaintiffs counter that it is undisputed that two defendants, Anjum and Majeed, did not take affirmative steps to assure that their wage-payment practices complied with applicable law.  Pl. Obj. at 21–22.

The Report is correct that, pending a finding of liability, it is premature to resolve this question.  If liability is found on plaintiffs' wage claims, defendants will be obliged to pay, in addition to past-due wages, liquidated damages under the FLSA, *see* 29 U.S.C. § 216(b), subject to the ability of the defense to negate the liquidated damages remedy upon a showing that the employer acted in subjective "good faith" with "objectively 'reasonable grounds" for believing his or her acts did not violate the FLSA.  *Garcia v. Saigon Mkt. LLC*, No. 15 Civ. 9433 (VSB), 2019 WL 4640260, at *11 (S.D.N.Y. Sept. 24, 2019).  At the summary judgment stage, courts are generally reluctant to rule on a party's good-faith defense where an FLSA violation has yet to be established.  *See, e.g.*, *Murray v. City of New York*, 16 Civ. 8072 (PKC), 2020 WL 615053, at *16 (S.D.N.Y. Feb. 10, 2020) ("Plaintiffs' summary judgment motion is denied as to their claimed FLSA violations, and it is therefore premature to reach the question of whether any hypothetical violation occurred in good faith and was grounded in the City's reasonable belief that it had complied with the law."); *Perry v. City of New York*, No. 13 Civ. 1015 (VSB), 2018 WL 1474401, at *8 (S.D.N.Y. Mar. 26, 2018) ("[A]t this stage, when there are disputed issues of fact with respect to liability, I find that there are likewise disputed issues of fact rendering any finding as to liquidated damages or willful infringement premature."); *Inclan v. N.Y. Hosp. Grp.*,

*Inc.*, 95 F. Supp. 3d 490, 503 (S.D.N.Y. 2015) ("Courts in this Circuit have generally left the question of willfulness to the trier of fact." (cleaned up)).

So too, here.  It is unknown the extent, if any, to which defendants' liability on the wage claims will be determined.  And the Court has not been privy to the trial testimony, which may inform its assessment of defendants' state of mind with respect to the particular violations that may be found.  With liability as-yet undetermined, it is sensible to await such evidence before determining whether a good-faith defense is factually viable.  *See Murray*, 2020 WL 615053, at *16 ("Even if it were not premature, a trier of fact is best positioned to weigh the conflicting evidence as to the City's subjective good faith and objective reasonableness.").

The Court, therefore, consistent with the Report, denies plaintiffs' motion for summary judgment on this affirmative defense.

## CONCLUSION

For the foregoing reasons, the Court enters summary judgment for plaintiffs on these issues: that (1) Anjum was an "employer" of Ametepe and Sabala; (2) Peak Time, Sam Dar, and Anjum were joint employers of Ametepe and Sabala; (3) Majeed was an "employer" of Boadi; and (4) Anjum failed to furnish wage statements to Ametepe and Sabala, in violation of NYLL § 195(3).

The Court also adopts the Report's recommendations to deny defendants' motion for summary judgment in its entirety, and to deny plaintiffs' motion for summary judgment as to whether: (1) Khan was an employer of Ametepe; (2) Majeed joins Peak Time, Sam Dar, and Anjum as joint employers of Ametepe and Sabala; (3) Peak Time, Sam Dar, FIH, and AD Parking were a single enterprise of parking garages; (4) defendants' good-faith defense should be dismissed; (5) defendants' defense that they did not willfully violate these statutes should be dismissed; and (6) defendants failed to maintain accurate records as a matter of law.

This case is now ready to proceed to trial on the outstanding claims.  The Court directs the parties promptly to confer, and, within three weeks of this decision, to submit a joint pretrial order fully complaint with the Court's Individual Rules.  Motions *in limine*, if any, are due on the same date as the joint pretrial order; opposition briefs are due one week later.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: March 29, 2021
New York, New York