USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/11/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

JAMES AMETEPE, on behalf of himself, individually,
and on behalf of all others similarly situated,

                                    Docket No:
                                    No. 18-CV-05384 (SDA)

                    Plaintiffs,

          -against-


PEAK TIME PARKING, CORP., and FIH
ENTERPRISE INC., and SAM DAR ENTERPRISES INC.,
and AD PARKING INC. and ZAFAR MAJEED,
individually, and FAYYAZ KHAN, individually, and
NAVEED ANJUM, individually, and MUSTAFA
ALI KHANDWALLA, individually,

                    Defendants.

_____


**STIPULATED ORDER OF DISMISSAL WITH PREJUDICE**

Upon the joint application of the Plaintiffs and Defendants in the above-captioned action, by their respective counsel, for entry of an Order of Dismissal with Prejudice, which incorporates within it all terms from the parties' negotiated Settlement Agreement and Release, attached hereto as Exhibit A, and the parties having consented to the entry of this Order; and sufficient cause appearing for the same; after due deliberation; it is

**HEREBY ORDERED AS FOLLOWS**:

1.      The parties' duly executed Settlement Agreement and Release, attached hereto as Exhibit A, and all terms contained within it, are hereby incorporated into the instant order.

2.      This action, including all claims asserted by the Plaintiffs herein, is hereby dismissed with prejudice as against all of the Defendants, pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure;

3.      All parties are directed to proceed in accordance with the Settlement Agreement and Release, and all parties are responsible for their own attorneys' fees and costs except as provided therein;

4.      The Court shall retain jurisdiction over this matter to enforce the terms of the parties' Settlement Agreement and Release, and to enter judgment against Defendants in accordance therewith, should that become necessary.

Dated: _November 10, 2021_


BORRELLI & ASSOCIATES, P.L.L.C.

By: _____
    Andrew C. Weiss , Esq.
910 Franklin Avenue, Suite 200
Garden City, New York 11530
*Attorneys for Plaintiffs*

BLAU LEONARD LAW GROUP, LLC

By: _____
Steven Bennett Blau, Esq.
23 Green Street, Suite 105
Huntington, New York 11743
*Attorneys for Defendants*

Having reviewed the proposed settlement, the Court finds that it is fair and reasonable. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015).

SO ORDERED this __11th__ day of __November__, 2021


_____
The Honorable Stewart D. Aaron, U.S.M.J.

EXHIBIT "A"

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

JAMES AMETEPE, on behalf of himself, individually,
and on behalf of all others similarly situated,

|  |  |
|---|---|
|  | Docket No: |
| Plaintiffs, | 18CV5384 |
|  | (PAE)(SDA) |

-against-

PEAK TIME PARKING, CORP., and FIH
ENTERPRISE INC., and SAM DAR ENTERPRISES INC.,
and AD PARKING INC. and ZAFAR MAJEED,
individually, and FAYYAZ KHAN, individually, and
NAVEED ANJUM, individually, and MUSTAFA
ALI KHANDWALLA, individually,

Defendants.
_____

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Settlement Agreement") is made and entered into by and between JAMES AMETEPE, PEDRO SABALA, and EMMANUAL BOADI ("Plaintiffs") and SAM DAR ENTERPRISES INC., ZAFAR MAJEED and NAVEED ANJUM ("Defendants") ("Plaintiffs" and "Defendants" are jointly referred to in this Settlement Agreement as the "Settling Parties"), as of November 10 , 2021.

## RECITALS

**WHEREAS**, on or about February 18, 2019, Plaintiffs JAMES AMETEPE filed an action against Defendants relating to his employment (the "Action"). On or about

June 18, 2021, Plaintiff PEDRO SABALA filed a Consent to Join Class.  On or about September 12, 2018, Plaintiff EMMANUAL BOADI filed a Consent to Join Class. The aforementioned Action is currently pending in the United States District Court, Southern District of New York, Case No.: 18-cv-5384 (PAE)(SDA);

**WHEREAS**, no court has considered or determined the merits of Plaintiffs' claims;

**WHEREAS**, Defendants admit no wrongdoing, nor any liability with respect to, Plaintiffs' allegations;

**WHEREAS**, the Settling Parties participated in multiple settlement conferences with U.S. Magistrate Judge, Stuart D. Aaron, at which time the Settling Parties expressed a desire to settle this matter to avoid the uncertainty, expense and burden of proceeding with the Action;

**WHEREAS**, no party to the Action is an infant or incompetent; and

**WHEREAS**, the Settling Parties agree, through the execution of this Settlement Agreement, which includes the terms agreed upon by the Settling Parties at the time of the settlement conferences, to dispose of and resolve fully and completely any and all disputes, causes of action, claims, issues and/or differences between the Settling Parties.

**NOW, THEREFORE**, in consideration of the foregoing, and in consideration of the covenants, warranties, and promises set forth below, receipt of which is hereby acknowledged, the Settling Parties agree as follows:

## AGREEMENTS

1.      <u>Consideration</u>. The Settling Parties are entering into this Settlement Agreement in exchange for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged. Plaintiffs agree that Plaintiffs will not seek any further consideration from or assert any additional or further claims against Defendants, including any monetary payment, beyond that which is set forth in Paragraph 2 of this Settlement Agreement, for the claims alleged, or could have been alleged, in the Action.

2.      <u>Settlement Compensation</u>. Defendants vigorously deny Plaintiffs' claims but acknowledge the expense and burden of proceeding with the Action. Plaintiffs also acknowledge the uncertainty, expense, time, and burden associated with proceeding with the Action and establishing entitlement to a recovery. In the interest of avoiding such uncertainty, expense and burden, the Settling Parties have agreed to resolve this matter pursuant to terms and conditions of this Settlement Agreement, which include, but are not limited to, Defendants agreeing to pay Plaintiffs the total sum of ONE HUNDRED FIFTY-FIVE THOUSAND DOLLARS AND NO CENTS ($155,000.00) (the "Settlement Payment"). The Settling Parties agree that the Settlement Payment is inclusive of costs and attorneys' fees and is made in full settlement of any and all claims the Plaintiffs have asserted, or could have asserted, against the named Defendants in the Action. The Settlement Payment will be made in one (1) down payment and thirteen (13) consecutive monthly installment payments as follows:

**a.** ***Down Payment.*** Defendants shall deliver to Plaintiffs' Counsel, Borrelli & Associates, PLLC, 910 Franklin Avenue, Suite 200, Garden City, New York 11530, seven (7) checks. The first check shall be made payable to Plaintiff AMETEPE in the amount of ($2,542.91), without deductions and/or withholdings, and shall be treated for tax purposes as 1099 MISC income. The second check shall be made payable to Plaintiff AMETEPE for salary (W-2 income) in the gross amount of ($2,542.91), before deductions and/or withholdings. The third check shall be made payable to Plaintiff BOADI in the amount of ($1,130.18), without deductions and/or withholdings, and shall be treated for tax purposes as 1099 MISC income. The fourth check shall be made payable to Plaintiff BOADI for salary (W-2 income) in the gross amount of ($1,130.19) before deductions and/or withholdings.  The fifth check shall be made payable to Plaintiff SABALA in the amount of ($1,977.82), without deductions and/or withholdings, and shall be treated for tax purposes as 1099 MISC income. The sixth check shall be made payment to Plaintiff SABALA for salary (W-2 income) in the gross amount of ($1,977.82), before deductions and/or withholdings.  The seventh check shall be made payable to Plaintiffs' counsel in the amount of ($13,698.17) and shall constitute a partial payment of attorney's fees, treated for tax purposes as 1099 MISC income to both attorneys and individually to each client pro rata.

**b.** ***First Installment.*** Within 30 days of the date of the date that the Down Payment is due, Defendants shall deliver to Plaintiffs' counsel, seven (7) additional   checks, which shall be held in escrow by Plaintiffs' counsel until their due dates, at which time said checks may be deposited for collection.  The first check shall be made payable to Plaintiff AMETEPE in the amount of ($1,500.00), without deductions and/or withholdings, and shall be treated for tax purposes as 1099 MISC income. The second check shall be made payable to Plaintiff AMETEPE for salary (W-2 income) in the gross amount of ($1,500.00), before deductions and/or withholdings. The third check shall be made payable to Plaintiff BOADI in the amount of ($666.67), without deductions and/or withholdings, and shall be treated for tax purposes as 1099 MISC income. The fourth check shall be made payable to Plaintiff BOADI for salary (W-2 income) in the gross amount of ($666.67), before deductions and/or withholdings.  The fifth check shall be made payable to Plaintiff SABALA in the amount of ($1,166.67), without deductions and/or withholdings, and shall be treated for tax purposes as 1099 MISC income. The sixth check shall be made payment to Plaintiff SABALA for salary (W-2 income) in the gross amount of ($1,166.67), before deductions and/or withholdings.  The seventh check shall be made payable to Plaintiffs' counsel in the amount of ($3,333.32), and shall constitute a partial payment of attorney's fees, treated for tax purposes as 1099 MISC income to both attorneys and individually each client pro rata.

*c.*     ***Second Installment.*** Within 60 days of the date of the date that the Down Payment is due, Defendants shall deliver to Plaintiffs' counsel, seven (7) additional   checks, which shall be held in escrow by Plaintiffs' counsel until their due dates, at which time said checks may be deposited for collection.  The first check shall be made payable to Plaintiff AMETEPE in the amount of ($1,500.00), without deductions and/or withholdings, and shall be treated for tax purposes as 1099 MISC income. The second check shall be made payable to Plaintiff AMETEPE for salary (W-2 income) in the gross amount of ($1,500.00), before deductions and/or withholdings. The third check shall be made payable to Plaintiff BOADI in the amount of ($666.67), without deductions and/or withholdings, and shall be treated for tax purposes as 1099 MISC income. The fourth check shall be made payable to Plaintiff BOADI for salary (W-2 income) in the gross amount of ($666.67), before deductions and/or withholdings.  The fifth check shall be made payable to Plaintiff SABALA in the amount of ($1,166.67), without deductions and/or withholdings, and shall be treated for tax purposes as 1099 MISC income. The sixth check shall be made payment to Plaintiff SABALA for salary (W-2 income) in the gross amount of ($1,166.67), before deductions and/or withholdings.  The seventh check shall be made payable to Plaintiffs' counsel in the amount of ($3,333.32), and shall constitute a partial payment of attorney's fees, treated for tax purposes as 1099 MISC income to both attorneys and individually each client pro rata.

*e.*     ***Third Installment.*** Within 90 days of the date of the date that the Down Payment is due, Defendants shall deliver to Plaintiffs' counsel, seven (7) additional   checks, which shall be held in escrow by Plaintiffs' counsel until their due dates, at which time said checks may be deposited for collection.  The first check shall be made payable to Plaintiff AMETEPE in the amount of ($1,500.00), without deductions and/or withholdings, and shall be treated for tax purposes as 1099 MISC income. The second check shall be made payable to Plaintiff AMETEPE for salary (W-2 income) in the gross amount of ($1,500.00), before deductions and/or withholdings. The third check shall be made payable to Plaintiff BOADI in the amount of ($666.67), without deductions and/or withholdings, and shall be treated for tax purposes as 1099 MISC income. The fourth check shall be made payable to Plaintiff BOADI for salary (W-2 income) in the gross amount of ($666.67), before deductions and/or withholdings.  The fifth check shall be made payable to Plaintiff SABALA in the amount of ($1,166.67), without deductions and/or withholdings, and shall be treated for tax purposes as 1099 MISC income. The sixth check shall be made payment to Plaintiff SABALA for salary (W-2 income) in the gross amount of ($1,166.67), before deductions and/or withholdings.  The seventh check shall be made payable to Plaintiffs' counsel in the amount of ($3,333.32), and shall constitute a partial payment of attorney's fees, treated for tax

purposes as 1099 MISC income to both attorneys and individually each client pro rata.

**f.**     ***Fourth Installment.*** Within 120 days of the date of the date that the Down Payment is due, Defendants shall deliver to Plaintiffs' counsel, seven (7) additional   checks, which shall be held in escrow by Plaintiffs' counsel until their due dates, at which time said checks may be deposited for collection.  The first check shall be made payable to Plaintiff AMETEPE in the amount of ($1,500.00), without deductions and/or withholdings, and shall be treated for tax purposes as 1099 MISC income. The second check shall be made payable to Plaintiff AMETEPE for salary (W-2 income) in the gross amount of ($1,500.00), before deductions and/or withholdings. The third check shall be made payable to Plaintiff BOADI in the amount of ($666.67), without deductions and/or withholdings, and shall be treated for tax purposes as 1099 MISC income. The fourth check shall be made payable to Plaintiff BOADI for salary (W-2 income) in the gross amount of ($666.67), before deductions and/or withholdings.  The fifth check shall be made payable to Plaintiff SABALA in the amount of ($1,166.67), without deductions and/or withholdings, and shall be treated for tax purposes as 1099 MISC income. The sixth check shall be made payment to Plaintiff SABALA for salary (W-2 income) in the gross amount of ($1,166.67), before deductions and/or withholdings.  The seventh check shall be made payable to Plaintiffs' counsel in the amount of ($3,333.32), and shall constitute a partial payment of attorney's fees, treated for tax purposes as 1099 MISC income to both attorneys and individually each client pro rata.

**g.**     ***Fifth Installment.*** Within 150 days of the date of the date that the Down Payment is due, Defendants shall deliver to Plaintiffs' counsel, seven (7) additional   checks, which shall be held in escrow by Plaintiffs' counsel until their due dates, at which time said checks may be deposited for collection.  The first check shall be made payable to Plaintiff AMETEPE in the amount of ($1,500.00), without deductions and/or withholdings, and shall be treated for tax purposes as 1099 MISC income. The second check shall be made payable to Plaintiff AMETEPE for salary (W-2 income) in the gross amount of ($1,500.00), before deductions and/or withholdings. The third check shall be made payable to Plaintiff BOADI in the amount of ($666.67), without deductions and/or withholdings, and shall be treated for tax purposes as 1099 MISC income. The fourth check shall be made payable to Plaintiff BOADI for salary (W-2 income) in the gross amount of ($666.67), before deductions and/or withholdings.  The fifth check shall be made payable to Plaintiff SABALA in the amount of ($1,166.67), without deductions and/or withholdings, and shall be treated for tax purposes as 1099 MISC income. The sixth check shall be made payment to Plaintiff SABALA for salary (W-2 income) in the gross amount of ($1,166.67), before deductions and/or withholdings.  The seventh

check shall be made payable to Plaintiffs' counsel in the amount of ($3,333.32), and shall constitute a partial payment of attorney's fees, treated for tax purposes as 1099 MISC income to both attorneys and individually each client pro rata.

**h.      *Sixth Installment.*** Within 180 days of the date of the date that the Down Payment is due, Defendants shall deliver to Plaintiffs' counsel, seven (7) additional   checks, which shall be held in escrow by Plaintiffs' counsel until their due dates, at which time said checks may be deposited for collection.  The first check shall be made payable to Plaintiff AMETEPE in the amount of ($1,500.00), without deductions and/or withholdings, and shall be treated for tax purposes as 1099 MISC income. The second check shall be made payable to Plaintiff AMETEPE for salary (W-2 income) in the gross amount of ($1,500.00), before deductions and/or withholdings. The third check shall be made payable to Plaintiff BOADI in the amount of ($666.67), without deductions and/or withholdings, and shall be treated for tax purposes as 1099 MISC income. The fourth check shall be made payable to Plaintiff BOADI for salary (W-2 income) in the gross amount of ($666.67), before deductions and/or withholdings.  The fifth check shall be made payable to Plaintiff SABALA in the amount of ($1,166.67), without deductions and/or withholdings, and shall be treated for tax purposes as 1099 MISC income. The sixth check shall be made payment to Plaintiff SABALA for salary (W-2 income) in the gross amount of ($1,166.67), before deductions and/or withholdings.  The seventh check shall be made payable to Plaintiffs' counsel in the amount of ($3,333.32), and shall constitute a partial payment of attorney's fees, treated for tax purposes as 1099 MISC income to both attorneys and individually each client pro rata.

**i.      *Seventh Installment.*** Within 210 days of the date of the date that the Down Payment is due, Defendants shall deliver to Plaintiffs' counsel, seven (7) additional   checks, which shall be held in escrow by Plaintiffs' counsel until their due dates, at which time said checks may be deposited for collection.  The first check shall be made payable to Plaintiff AMETEPE in the amount of ($1,500.00), without deductions and/or withholdings, and shall be treated for tax purposes as 1099 MISC income. The second check shall be made payable to Plaintiff AMETEPE for salary (W-2 income) in the gross amount of ($1,500.00), before deductions and/or withholdings. The third check shall be made payable to Plaintiff BOADI in the amount of ($666.67), without deductions and/or withholdings, and shall be treated for tax purposes as 1099 MISC income. The fourth check shall be made payable to Plaintiff BOADI for salary (W-2 income) in the gross amount of ($666.67), before deductions and/or withholdings.  The fifth check shall be made payable to Plaintiff SABALA in the amount of ($1,166.67), without deductions and/or withholdings, and shall be treated for tax purposes as 1099 MISC income. The sixth check shall be

made payment to Plaintiff SABALA for salary (W-2 income) in the gross amount of ($1,166.67), before deductions and/or withholdings.  The seventh check shall be made payable to Plaintiffs' counsel in the amount of ($3,333.32), and shall constitute a partial payment of attorney's fees, treated for tax purposes as 1099 MISC income to both attorneys and individually each client pro rata.

*j.*     ***Eighth Installment.*** Within 240 days of the date of the date that the Down Payment is due, Defendants shall deliver to Plaintiffs' counsel, seven (7) additional   checks, which shall be held in escrow by Plaintiffs' counsel until their due dates, at which time said checks may be deposited for collection.  The first check shall be made payable to Plaintiff AMETEPE in the amount of ($1,500.00), without deductions and/or withholdings, and shall be treated for tax purposes as 1099 MISC income. The second check shall be made payable to Plaintiff AMETEPE for salary (W-2 income) in the gross amount of ($1,500.00), before deductions and/or withholdings. The third check shall be made payable to Plaintiff BOADI in the amount of ($666.67), without deductions and/or withholdings, and shall be treated for tax purposes as 1099 MISC income. The fourth check shall be made payable to Plaintiff BOADI for salary (W-2 income) in the gross amount of ($666.67), before deductions and/or withholdings.  The fifth check shall be made payable to Plaintiff SABALA in the amount of ($1,166.67), without deductions and/or withholdings, and shall be treated for tax purposes as 1099 MISC income. The sixth check shall be made payment to Plaintiff SABALA for salary (W-2 income) in the gross amount of ($1,166.67), before deductions and/or withholdings.  The seventh check shall be made payable to Plaintiffs' counsel in the amount of ($3,333.32), and shall constitute a partial payment of attorney's fees, treated for tax purposes as 1099 MISC income to both attorneys and individually each client pro rata.

*k.*     ***Ninth Installment.*** Within 270 days of the date of the date that the Down Payment is due, Defendants shall deliver to Plaintiffs' counsel, seven (7) additional   checks, which shall be held in escrow by Plaintiffs' counsel until their due dates, at which time said checks may be deposited for collection.  The first check shall be made payable to Plaintiff AMETEPE in the amount of ($1,500.00), without deductions and/or withholdings, and shall be treated for tax purposes as 1099 MISC income. The second check shall be made payable to Plaintiff AMETEPE for salary (W-2 income) in the gross amount of ($1,500.00), before deductions and/or withholdings. The third check shall be made payable to Plaintiff BOADI in the amount of ($666.67), without deductions and/or withholdings, and shall be treated for tax purposes as 1099 MISC income. The fourth check shall be made payable to Plaintiff BOADI for salary (W-2 income) in the gross amount of ($666.67), before deductions and/or withholdings.  The fifth check shall be made payable to Plaintiff SABALA in

the amount of ($1,166.67), without deductions and/or withholdings, and shall be treated for tax purposes as 1099 MISC income. The sixth check shall be made payment to Plaintiff SABALA for salary (W-2 income) in the gross amount of ($1,166.67), before deductions and/or withholdings.  The seventh check shall be made payable to Plaintiffs' counsel in the amount of ($3,333.32), and shall constitute a partial payment of attorney's fees, treated for tax purposes as 1099 MISC income to both attorneys and individually each client pro rata.

*l.*       ***Tenth Installment.*** Within 300 days of the date of the date that the Down Payment is due, Defendants shall deliver to Plaintiffs' counsel, seven (7) additional   checks, which shall be held in escrow by Plaintiffs' counsel until their due dates, at which time said checks may be deposited for collection.  The first check shall be made payable to Plaintiff AMETEPE in the amount of ($1,500.00), without deductions and/or withholdings, and shall be treated for tax purposes as 1099 MISC income. The second check shall be made payable to Plaintiff AMETEPE for salary (W-2 income) in the gross amount of ($1,500.00), before deductions and/or withholdings. The third check shall be made payable to Plaintiff BOADI in the amount of ($666.67), without deductions and/or withholdings, and shall be treated for tax purposes as 1099 MISC income. The fourth check shall be made payable to Plaintiff BOADI for salary (W-2 income) in the gross amount of ($666.67), before deductions and/or withholdings.  The fifth check shall be made payable to Plaintiff SABALA in the amount of ($1,166.67), without deductions and/or withholdings, and shall be treated for tax purposes as 1099 MISC income. The sixth check shall be made payment to Plaintiff SABALA for salary (W-2 income) in the gross amount of ($1,166.67), before deductions and/or withholdings.  The seventh check shall be made payable to Plaintiffs' counsel in the amount of ($3,333.32), and shall constitute a partial payment of attorney's fees, treated for tax purposes as 1099 MISC income to both attorneys and individually each client pro rata.

*m.*      ***Eleventh Installment.*** Within 330 days of the date of the date that the Down Payment is due, Defendants shall deliver to Plaintiffs' counsel, seven (7) additional   checks, which shall be held in escrow by Plaintiffs' counsel until their due dates, at which time said checks may be deposited for collection.  The first check shall be made payable to Plaintiff AMETEPE in the amount of ($1,500.00), without deductions and/or withholdings, and shall be treated for tax purposes as 1099 MISC income. The second check shall be made payable to Plaintiff AMETEPE for salary (W-2 income) in the gross amount of ($1,500.00), before deductions and/or withholdings. The third check shall be made payable to Plaintiff BOADI in the amount of ($666.67), without deductions and/or withholdings, and shall be treated for tax purposes as 1099 MISC income. The fourth check shall be made payable to Plaintiff BOADI for

salary (W-2 income) in the gross amount of ($666.67), before deductions and/or withholdings. The fifth check shall be made payable to Plaintiff SABALA in the amount of ($1,166.67), without deductions and/or withholdings, and shall be treated for tax purposes as 1099 MISC income. The sixth check shall be made payment to Plaintiff SABALA for salary (W-2 income) in the gross amount of ($1,166.67), before deductions and/or withholdings.  The seventh check shall be made payable to Plaintiffs' counsel in the amount of ($3,333.32), and shall constitute a partial payment of attorney's fees, treated for tax purposes as 1099 MISC income to both attorneys and individually each client pro rata.

**n.      Twelfth Installment.** Within 360 days of the date of the date that the Down Payment is due, Defendants shall deliver to Plaintiffs' counsel, seven (7) additional   checks, which shall be held in escrow by Plaintiffs' counsel until their due dates, at which time said checks may be deposited for collection.  The first check shall be made payable to Plaintiff AMETEPE in the amount of ($1,500.00), without deductions and/or withholdings, and shall be treated for tax purposes as 1099 MISC income. The second check shall be made payable to Plaintiff AMETEPE for salary (W-2 income) in the gross amount of ($1,500.00), before deductions and/or withholdings. The third check shall be made payable to Plaintiff BOADI in the amount of ($666.67), without deductions and/or withholdings, and shall be treated for tax purposes as 1099 MISC income. The fourth check shall be made payable to Plaintiff BOADI for salary (W-2 income) in the gross amount of ($666.67), before deductions and/or withholdings.  The fifth check shall be made payable to Plaintiff SABALA in the amount of ($1,166.67), without deductions and/or withholdings, and shall be treated for tax purposes as 1099 MISC income. The sixth check shall be made payment to Plaintiff SABALA for salary (W-2 income) in the gross amount of ($1,166.67), before deductions and/or withholdings.  The seventh check shall be made payable to Plaintiffs' counsel in the amount of ($3,333.32), and shall constitute a partial payment of attorney's fees, treated for tax purposes as 1099 MISC income to both attorneys and individually each client pro rata.

**o.      Thirteenth Final Installment.** Within 390 days of the date of the date that the Down Payment is due, Defendants shall deliver to Plaintiffs' counsel, seven (7) additional  checks, which shall be held in escrow by Plaintiffs' counsel until their due dates, at which time said checks may be deposited for collection. The first check shall be made payable to Plaintiff AMETEPE in the amount of ($1,500.00), without deductions and/or withholdings, and shall be treated for tax purposes as 1099 MISC income. The second check shall be made payable to Plaintiff AMETEPE for salary (W-2 income) in the gross amount of ($1,500.00), before deductions and/or withholdings. The third check shall be made payable to Plaintiff BOADI in the amount of ($666.67), without

deductions and/or withholdings, and shall be treated for tax purposes as 1099 MISC income. The fourth check shall be made payable to Plaintiff BOADI for salary (W-2 income) in the gross amount of ($666.67), before deductions and/or withholdings.  The fifth check shall be made payable to Plaintiff SABALA in the amount of ($1,166.67), without deductions and/or withholdings, and shall be treated for tax purposes as 1099 MISC income. The sixth check shall be made payment to Plaintiff SABALA for salary (W-2 income) in the gross amount of ($1,166.67), before deductions and/or withholdings.  The seventh check shall be made payable to Plaintiffs' counsel in the amount of ($3,333.32), and shall constitute a partial payment of attorney's fees, treated for tax purposes as 1099 MISC income to both attorneys and individually each client pro rata.

The Settlement Payment(s) will be sent to Plaintiffs' attorney within five (5) business days after the last of the following have occurred: (i) Judge Aaron has "So Ordered" and filed the Voluntary Dismissal with Prejudice to which this Settlement Agreement is attached (ii) and Defendants' attorneys' (Blau Leonard Law Group, LLC.) receipt, from Plaintiffs, of a signed copy of this Settlement Agreement and all necessary tax forms.[1]

Defendants make no representations as to the taxability of the Settlement Payment and advise Plaintiffs to consult with Plaintiffs' tax advisor as to any tax implications of the Settlement Payment(s). Plaintiffs further agree that Plaintiffs are solely responsible for any additional or applicable taxes, penalties, interest, or other amounts due on the payments described in this Paragraph 2 and shall defend and indemnify Defendants and/or their respective successors, assigns, parents, subsidiaries, divisions, affiliates, insurers, officers, directors, trustees, employees,

---

[1] Plaintiff Ametepe's 1099 checks will be held by Plaintiffs' counsel in escrow only to be released upon Defense Counsel's receipt of proper tax documentation.  Ametepe's W-2 income checks will be calculated and released to Plaintiffs' counsel within 7 business days of receipt of his W4 document.

attorneys, agents and representatives and hold them harmless for any taxes, penalties, or interest they may be required to pay related to the payments described in this Paragraph 2.

3.      <u>No Consideration Absent Execution of this Settlement Agreement</u>. Plaintiffs understand and agree that the payment described in Paragraph 2 would not be provided except for Plaintiffs' execution of this Settlement Agreement and the fulfillment of the terms and conditions contained in this Settlement Agreement.

4.      <u>Prevailing Party</u>. The Settling Parties agree that neither party shall be considered a "prevailing party" in the Action and that the payments provided in Paragraph 2 serve to cover, amongst other things, any and all costs and attorneys' fees and related expenses incurred by Plaintiffs with respect to the Action.

5.      <u>No Admission of Liability</u>. This Settlement Agreement is a result of a negotiated compromise and accord by the Settling Parties of disputed claims in the Action. It is expressly understood and agreed that nothing contained in this Settlement Agreement is intended to be, nor shall be construed as, nor shall be represented by any party, their attorneys or their agents to be, an admission or determination of liability by Defendants or Plaintiffs, or their agents or employees, as to the validity of any of Plaintiffs' claims or allegations in the Action. Defendants continues to deny any and all allegations that Plaintiffs were not paid appropriately and further deny any liability for any of Plaintiffs' claims in the Action. It is further acknowledged that this Settlement Agreement shall not be used by either of the Settling Parties as evidence or in any other matter or for any other purpose in any court or administrative

proceeding, or any other proceeding except for an action arising under the interpretation or enforcement of this Settlement Agreement.

6.     Mutual Release and Waiver.

(1) a.   Plaintiffs' Release and Waiver. In consideration of and in exchange for the undertakings assumed and promises made by Defendants pursuant to this Settlement Agreement, Plaintiffs knowingly and voluntarily release and forever discharge PEAK TIME PARKING, CORP., FIH ENTERPRISE INC., SAM DAR ENTERPRISES INC., AD PARKING INC., ZAFAR MAJEED, FAYYAZ KHAN, NAVEED ANJUM  and MUSTAFA ALI KHANDWALLA, their  past and present parent companies, affiliates, divisions, predecessors, successors and assigns, and any and all of such entities' past or present employees, officers, directors, partners, owners, administrators, managers, contractors, agents, representatives, and assigns (hereafter collectively referred to as "Releasees") from any and all liabilities, agreements, compensation, policies, claims, demands, damages and causes of action of every kind and nature, related to or arising out of any common law, federal, state or local laws, rules or regulations, asserted by Plaintiffs in the Action or otherwise related to Defendants' payment of wages to Plaintiffs, which Plaintiffs ever had, now have, or may hereafter have against Releasees from the beginning of time and occurring up to and including the date on which Plaintiffs sign this Settlement Agreement, with respect solely and only to conduct that has arisen on, or prior to, the date this Settlement Agreement is executed, fully and forever releases, relieves, waives, relinquishes, and discharges Defendants, to the fullest extent permitted by law, from

all actions, causes of action, suits, debts, dues, liabilities, obligations, costs, expenses, sums of money, controversies, accounts, reckonings, liens, bonds, bills, specialties, covenants, contracts, agreements, promises, damages, judgments, executions, claims and demands of any kind whatsoever, at law or in equity, direct or indirect, known or unknown, discovered or undiscovered, which they had, now has or hereafter can, shall or may have against named Defendants, arising out of, by reason of, or relating in any way whatsoever to any matter, cause or thing from the beginning of the world through the date this Settlement Agreement is executed, including but not limited to: (i) claims arising directly or indirectly from Plaintiffs' employment with Defendants, and the termination of that employment; (ii) claims arising directly or indirectly from the actions or inaction of Defendants; (iii) claims under federal, state or local laws, statutes, constitutions, treaties, regulations, rules, ordinances or orders, including, but not limited to, claims under the New York Labor Law, the Wage Theft Prevention Act, the New York Hospitality Wage Order, New York Order for Miscellaneous Industries and Occupations, the Fair Labor Standards Act, Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1866, the Age Discrimination in Employment Act, the Americans with Disabilities Act of 1990, the Employee Retirement Income Security Act of 1974, the Equal Pay Act, the Immigration Reform and Control Act, the National Labor Relations Act, the Consolidated Omnibus Budget Reconciliation Act, the Fair Credit Reporting Act, the Sarbanes Oxley Act, the Occupational Safety and Health Act, the Family and Medical Leave Act of 1993, the New York

Corrections Law, including Sections 750-755 thereof, the New York State Human Rights Law, the New York City Human Rights Law, each as amended, or any other federal, state, or municipal law;

       b.     Limitations on Claims Released. Plaintiffs' Release and Waiver shall not apply to: (i) Plaintiffs' rights under this Settlement Agreement; and (ii) any claims that cannot be waived by law, including but not limited to the right to file a charge with or participate in an investigation conducted by certain government agencies.

       c.     Release to be Final and Binding/Effect of Challenge. The Parties understand that Plaintiffs' Release and Waiver is final and binding upon Plaintiffs. If Plaintiffs attempt to challenge the enforceability of Plaintiffs' Release and Waiver and/or take any action that violates any of the terms of this Settlement Agreement, the Releasees may exercise such rights as they may have to pursue legal and equitable remedies and may be entitled to restitution, set-off, or recoupment of some or all of the payments provided under this Settlement Agreement. If Plaintiffs bring against Defendants, and/or any of Releasees, any claim that has been released under this Settlement Agreement, Plaintiffs agree to pay Defendants' and/or the Releasees' attorneys' fees and costs incurred in defending any such released claim, except any claim prohibited by law.

       (2) Release by Defendants.  In further consideration of the promises, payments and actions of Plaintiffs set out in this Agreement and other good and valuable consideration, the receipt of which is hereby acknowledged, Defendants,

with respect solely and only to conduct that has arisen on, or prior to, the date this Settlement Agreement is executed, fully and forever release, relieve, waive, relinquish, and discharge Plaintiffs JAMES AMETEPE, PEDRO SABALA and EMMANUAL BOADI from all actions, causes of action, suits, debts, dues, liabilities, obligations, costs, expenses, sums of money, controversies, accounts, reckonings, liens, bonds, bills, specialties, covenants, contracts, agreements, promises, damages, judgments, executions, claims and demands of any kind whatsoever, at law or in equity, direct or indirect, known or unknown, discovered or undiscovered, which they had, now have or hereafter can, shall or may have against Plaintiffs, arising out of, by reason of, or relating in any way whatsoever to any matter, cause or thing from the beginning of the world through the date this Settlement Agreement is executed, including but not limited to: (i) claims arising directly or indirectly from Defendants' association with Plaintiffs, whether as employers or otherwise, and the termination of that association; (ii) claims arising directly or indirectly from the actions or inaction of Plaintiffs; (iii) claims under federal, state or local laws, statutes, constitutions, treaties, regulations, rules, ordinances or orders; (iv) any other claim, whether for monies owed, reimbursement, attorneys' fees, litigation costs, damages, torts, intentional infliction of emotional distress, negligence, promissory estoppel, quantum meruit, breach of contract, breach of an implied covenant of good faith and fair dealing, defamation, fraud, misrepresentation, or otherwise, arising prior to or at the time of the execution of the Settlement Agreement. This release is limited solely and only to claims that have arisen on, or prior to, the date this Settlement Agreement is

executed and transmitted to counsel for Plaintiffs and it does not release or discharge any claims that may occur after that date.

  7. <u>Mutual Knowing Release and Waiver</u>. Plaintiffs' and Defendants' Release and Waiver is knowing and voluntary, which means, at a minimum, that they each understand that:

    a. The release and waiver is part of an agreement between Plaintiffs and Defendants and is written so that Plaintiffs and Defendants understand it.

    b. Plaintiffs and Defendants do not waive any rights or claims that may arise after Plaintiffs and Defendants execute this Settlement Agreement.

    c. Plaintiffs' and Defendants' waiver is in exchange for consideration that is more valuable than that to which Plaintiffs and Defendants are already entitled.

    d. The Parties hereby advise each other to consult with an attorney prior to executing this Settlement Agreement.

    e. Plaintiffs and Defendants are eligible to receive the benefits provided herein as a result of Plaintiffs' execution of this Settlement Agreement, all of which is more particularly set forth herein.

  By execution of this Settlement Agreement, Plaintiffs and Defendants acknowledges that: (a) the Parties understand the terms of the entire Settlement Agreement, including but not limited to the Mutual Release and Waiver set forth in Paragraph 6 of this Settlement Agreement and the Knowing Release and Waiver set forth in Paragraph 7 of this Settlement Agreement and, therefore, the Parties' release

and waiver is knowing and voluntary; (b) if a party provides consideration under this Settlement Agreement and the other party later challenges the enforceability of this Settlement Agreement, the challenging party may be required to repay the other party for all monies paid and consideration provided hereunder, unless otherwise prohibited by law; and (c) both Parties have been advised to consult with an attorney prior to execution of this Settlement Agreement.

8.    <u>Voluntary Dismissal with Prejudice</u>. Plaintiffs agree to execute the Request for Voluntary Dismissal, to which this Settlement Agreement is attached, which contains a statement that the Action is dismissed with prejudice against all named Defendants. Plaintiffs understand that by filing this Request for Voluntary Dismissal, Plaintiffs are voluntarily agreeing to dismiss the Action with prejudice pursuant to the terms of this Settlement Agreement.

The Settling Parties agree and acknowledge that the Settlement Amount is in full and final satisfaction of any and all of Plaintiffs' claims that were asserted or could have been asserted in his action. The Settling Parties both hereby agree that neither they, nor any attorneys that they have consulted or retained, will make any claim for attorneys' fees or costs under any statute or under any other legal theory in the Action or in any other matter. Plaintiffs represent that other than the Action, no claim, charge, complaint or action to which any Plaintiff is a party exists against Defendants or Releasees in any forum.

9.    <u>Public Statements and Non-Disparagement</u>. The Settling Parties agree that neither Plaintiffs nor Defendants' individually or through their agents, servants

and/or employees, shall knowingly make, or direct to be made, publish, or repeat at any time, any false statements, either oral or written, regarding any events which took place during Plaintiffs' employment with Defendants, this Settlement Agreement, or payment of the Settlement Amount. Plaintiffs specifically agree, to the extent allowed under law, not to knowingly make, or direct to be made, publish, or repeat any false statements about Defendants, their officers, directors, shareholders, employees, the Settlement Agreement and/or the Settlement Amount on social media, which includes but is not limited to Facebook, Twitter, LinkedIn and/or WordPress, or to otherwise make such statements to local television, newspaper or radio media. Defendants further agree that they will not individually and/or through their officers, directors, shareholders, employees make, publish or repeat any false statements about Plaintiffs, the Settlement Agreement and/or the Settlement Amount on social media, which includes but is not limited to Facebook, Twitter, LinkedIn and/or WordPress, or to otherwise make such statements to local television, newspaper or radio media. The Settling Parties further agree that they will neither now nor in the future make knowingly disparaging statements intended to injure the personal and/or business reputation of Plaintiffs or Defendants, respectively. For purposes of this Paragraph 9, the term "disparaging" shall mean to depreciate by direct or indirect means to a person or entity not a Party to this Settlement Agreement, including referring to the Party disapprovingly, contemptuously, belittling, scornfully, derisively, or otherwise express a negative opinion, or cause damage to the reputation of a Party to the Settlement Agreement. The Settling Parties agree and acknowledges that a breach

of this Paragraph 9 shall constitute a material breach of this Settlement Agreement. Nothing contained in this Paragraph 9 shall preclude either Party from making any truthful statement. Nothing herein is meant to prohibit any Party from providing documents or testifying truthfully under oath pursuant to any lawful court order or subpoena.

10.     Non-Exclusive Remedies. The Settling Parties acknowledge and agree that: (a) any breach of Paragraph 9 of this Settlement Agreement will damage the Settling Parties; (b) it may be difficult or impossible to quantify precisely in monetary terms the damage so caused; and (c) that the Settling Parties agreement to Paragraph 9 is an essential prerequisite of, and an essential inducement for executing this Settlement Agreement. Accordingly, the Settling Parties further agree that in the event of any actual or threatened breach of Paragraph 9, the aggrieved party shall be entitled to (d) temporary and permanent injunctive relief to enforce the provisions of Paragraph 9, and (e) in addition to seeking such an injunction, to claim and receive liquidated damages adjudicated by the Court.

11.     Review of the Settlement Agreement. Plaintiffs acknowledge that they have carefully read this Settlement Agreement and understand all of its terms, and that Plaintiffs sign it voluntarily with full knowledge of its significance after adequate opportunity for consideration and consultation with an attorney/advisor. Plaintiffs represent that no payments or consideration have been promised to them for executing or delivering this Settlement Agreement other than those described herein, and that the payment and benefits described herein shall constitute the entire amount of

consideration provided to each of them under the Settlement Agreement. Plaintiffs acknowledge that the settlement amount constitutes adequate and sufficient consideration for the claims released herein and any other promises made under this Settlement Agreement. The recitals stated above are incorporated herein by reference. The Settling Parties have each received or had the opportunity to receive independent legal advice from attorney(s) of their choice with respect to the preparation, review and advisability of executing this Settlement Agreement. The Settling Parties acknowledge that they have executed this Settlement Agreement after independent investigation and without fraud, duress or undue influence.

12.     Applicable Law. The Parties agree that this Settlement Agreement shall be construed in accordance with the laws of the State of New York (without regard to choice of law or conflict of laws rules), except that there shall be no presumption against the drafter in the interpretation of this Settlement Agreement pursuant herein. The Parties further agree that if any legal disputes arise relating in any way to any aspect of the Settlement Agreement and the actions contemplated hereby, any and all litigation pertaining to such dispute(s) shall be brought in United States District Court, Southern District of New York, which shall expressly retain personal and subject matter jurisdiction, pursuant to the agreement of the parties herein.

13.     Headings. The Settling Parties understand and agree that the headings in this Settlement Agreement are for their convenience only and have no legal significance.

14.   Entire Agreement. This Settlement Agreement contains all the understandings and representation between the Settling Parties relating to the subject matter herein, and supersedes all prior and contemporaneous understandings, discussions, agreements, representations, and warranties, both written and oral, with respect to such subject matter. The Settling Parties mutually agree that this Settlement Agreement can be specifically enforced in court and can be cited as evidence in legal proceedings alleging a breach of this Settlement Agreement.

15.   Penalty for Non-Payment. Defendants agree that the payments set forth in Paragraph 2 are due in a timely manner.  If Defendants do not make a payment to Plaintiffs or Plaintiffs' counsel pursuant to the schedule set forth in this Agreement, then Plaintiffs shall provide notice of default to Defendants via email at sblau@blauleonardlaw.com and sleonard@blauleonardlaw.com.  Defendants have five (5) business days from the date of receipt of such notice within which to cure the default by delivering to Plaintiffs' attorneys, at the address listed above, via overnight delivery any amounts due and owing.  If Defendants timely cure their breach, the date of the next payment due is its original date or, if past due, immediately.  If Defendants fail to timely cure their breach, the total amount of the Settlement Payment, one-hundred and fifty-five thousand dollars ($155,000.00) will then become due and owing, regardless of the amount previously paid by Defendants to Plaintiffs and a consent judgment for this amount will be entered with this Court, which has retained jurisdiction over this matter to enforce the Settlement Agreement.

16.   <u>Severability</u>. Should any provision of this Settlement Agreement be declared or determined by any court of competent jurisdiction to be illegal or invalid, the validity of the remaining parts, terms, or provisions shall not be affected thereby, and said illegal or invalid part, term, or provision shall be deemed not to be part of this Settlement Agreement, provided, however, that, upon any finding by a court of competent jurisdiction that Plaintiffs' General Release and Waiver set forth in Paragraph 6 of this Settlement Agreement or the Knowing Release and Waiver set forth in Paragraph 7 of this Settlement Agreement is illegal, void, or unenforceable or not entered into knowingly or voluntarily, Plaintiffs agrees, at Defendants' option, to either to promptly return to Defendants the full amount (or such lesser amount if Defendants so demands) of the value of the payment paid to him pursuant to this Settlement Agreement or to execute a release, waiver and/or covenant that is legal and enforceable and achieves the intended purpose of the original Plaintiffs' General Release and Waiver set forth in Paragraph 6 of this Settlement Agreement and the Knowing Release and Waiver set forth in Paragraph 7 of this Settlement Agreement. If Defendants exercise its option under this Paragraph to require Plaintiffs to return the full amount, or any portion, of the payment provided by this Settlement Agreement, Plaintiffs shall not be entitled to any other benefits or consideration set forth in this Settlement Agreement. In the event the Defendants' General Release and Waiver set forth in Paragraph 6 of this Settlement Agreement is illegal, void or unenforceable, Defendants agrees to execute a release, waiver and/or covenant that is legal and

enforceable and achieves the intended purpose of the original Defendants' General Release and Waiver set forth in Paragraph 6 of this Settlement Agreement.

16.    <u>Counterparts</u>. The Settling Parties may execute this Settlement Agreement in counterparts, and facsimiles shall be deemed an original, and all of which taken together, shall constitute one and the same instrument.

17.    <u>Joint Effort</u>. The Settling Parties stipulate that this Settlement Agreement was prepared by and is the joint effort of the Settling Parties through negotiations. Accordingly, any ambiguity, uncertainty or vagueness in the construction and interpretation of this Settlement Agreement shall not be attributed to either Plaintiffs or Defendants, and the theory of construction that a document should be construed against the party drafting the document is waived and will not be applied in construing this Settlement Agreement.

THE SETTLING PARTIES ACKNOWLEDGE AND AGREE THAT THEY HAVE FULLY READ, UNDERSTAND, AND VOLUNTARILY ENTER INTO THIS SETTLEMENT AGREEMENT. THE SETTLING PARTIES ACKNOWLEDGE AND AGREE THAT THEY HAVE CONSULTED WITH, AND ARE ACTING ON ADVICE OF AN ATTORNEY, BY SIGNING THIS SETTLEMENT AGREEMENT.

IN WITNESS THEREOF, the Settling Parties hereto evidence their agreement by their signature below.

_____
JAMES AMETEPE

Date: _____November 9_____, 2021

_____
PEDRO SABALA

Date: 11 — 09 — , 2021

_____
EMMANUEL BOADI

Date: _____November 10_____, 2021

SAM DAR ENTERPRISES INC.,

By: _____

Name:

Title:

Date: _____, 2021


_____
ZAFAR MAJEED

Date: _____, 2021

_____

NAVEED ANJUM

Date: _____, 2021

THE SETTLING PARTIES ACKNOWLEDGE AND AGREE THAT THEY HAVE FULLY READ, UNDERSTAND, AND VOLUNTARILY ENTER INTO THIS SETTLEMENT AGREEMENT. THE SETTLING PARTIES ACKNOWLEDGE AND AGREE THAT THEY HAVE CONSULTED WITH, AND ARE ACTING ON ADVICE OF AN ATTORNEY, BY SIGNING THIS SETTLEMENT AGREEMENT.

IN WITNESS THEREOF, the Settling Parties hereto evidence their agreement by their signature below.

_____
JAMES AMETEPE

Date: _____, 2021

_____
PEDRO SABALA

Date: _____, 2021

_____
EMMANUEL BOADI

Date: _____, 2021

SAM DAR ENTERPRISES INC.,

By: _____

Name: NAVEED ANJUM

Title: PRESIDENT

Date: 11/4/21 _____, 2021

_____
ZAFAR MAJEED

Date: 11/04/21 _____, 2021

_____

NAVEED ANJUM

Date: ___11/4/21_____, 2021

## Reconocimiento/SPA

Yo, PEDRO SABLA, por la presente reconozco que en el 9 de noviembre del 2021, Pablo Martínez me tradujo *por* teléfono el Acuerdo de Conciliación y Liberación al español. Además, reconozco que entiendo los HECHOS y TÉRMINOS del Acuerdo de Conciliación y Liberación y que los mismos son verdaderos a mi conocimiento, información y creencia. Yo Firmo este reconocimiento con pleno conocimiento y consentimiento.

_____
PEDRO SABALA

El _09_ de noviembre de 2021
FECHA

## Acknowledgement/ENG

I, PEDRO SABLA, hereby acknowledge that on November 9, 2021, the Settlement Agreement and Release was translated into Spanish for me by Pablo Martinez *via* phone. I further acknowledge that I understand the FACTS and TERMS of the Settlement Agreement and Release and that the same are true to my knowledge, information, and belief. I sign this acknowledgment with full knowledge and consent.

_____
PEDRO SABALA

November _09_, 2021
DATE